CORNELL UNIVERSITY, Respondent, *v.* MESSING BAKERIES, INC., Appellant.

Third Department, March 9, 1955.

*George G. Coughlin, Edward S. Dermody* and *Charles E. Scribner* for appellant.

*Forbes D. Shaw, Harry G. Henn* and *J. William Robinson* for respondent.

BERGAN, J. Defendant is a baker. Using a formula for making bread evolved by Dr. Clive McCay, a professor at the New York State College of Agriculture, which is a part of Cornell University, defendant has extensively promoted it under the name of " Cornell Recipe Bread ". The product made by the formula is described as " a highly nutritious kind of bread ".

The recipe was released to the public in 1949 and its commercial utilization unrestricted. Cornell University, as plaintiff in this action for an injunction, objects, however, to the use of " Cornell " in the marketing of the bread unless under conditions which it has attached to its consent. The court at Special Term has granted an injunction which does not prohibit the use of " Cornell " in the sale of the bread but which alters some of the methods in which its use has been exploited. The baker feels aggrieved and appeals.

The university seems satisfied with the limited extent to which the judgment interferes with the use of " Cornell " by the baker. It is useful to begin by seeing what the judgment does and what it does not do in its effect on the baker's business.

It allows the baker to use the words " Cornell Formula Bread " but prohibits " Cornell Recipe Bread " which the baker has been using. It requires the name of the baker to be displayed on the bread wrapper in letters twice as large as " Cornell Formula Bread " and it prohibits the placing of the phrase

containing " Cornell " on a scroll, banner, flag, or similar device. There are other things about the judgment which the baker challenges, but these are the principal ones.

We have no difficulty in holding to be valid Cornell's argument that it has a legal interest in preventing the exploitation of its name for business purposes. It is not necessary to jurisdiction or to relief that plaintiff be another business in the same line. Because the university is a university and not a baker it is not to be deprived of every legal interest in the use of " Cornell * * * Bread ". The ground of equitable intervention is not merely " unfair competition " in the limited sense of protecting the solidly acquired rights of one business enterprise against another striving for the same market. Equity may also shield the thrust by business into the kind of legal rights acquired in areas entirely removed from commercial activities.

The theory underlying injunctive interference is that an educational institution which has won large public prestige by hard effort and at high cost ought not, against its will, have that prestige diluted by a commercial use of its name, suggesting connection or benefit to the institution from the enterprise.

The key word in the name of the university might, of course, be used under circumstances which would not touch upon or invade the university's area of protection. A coal mine or a tug or trucking enterprise might, for example, use " Cornell " and no one would think the university either involved or concerned. But there are many other kinds of use of the main component word of the university name which could be read to suggest a link to the university; and " Cornell Recipe Bread " using a formula worked out at the university could quite sensibly be regarded as unduly and adversely affecting the university's rights when commercially exploited.

The question would, as we see it, often be an open one on the facts, and so we regard it in this case. Because this bread formula did come from Cornell University; because of the general publication of the findings in trade and other journals on their promulgation at the university; because of the conjunctive use of " recipe " or " formula " with " Cornell " and with " bread ", the use of " Cornell " here may be seen, not just as coincidence, but as having a pointed reference to the plaintiff.

Where it is perfectly clear that the use of the name is a simulation of a name already in use, relief has been granted to noncommercial organizations without need to show there has been unfair " business " competition. Relief in this general scope has been granted to a patriotic society against the use of an

almost identical name (*Society of 1812* v. *Society of 1812,* 46 App. Div. 568); to a " Salvation Army " (*Salvation Army in U. S.* v. *American Salvation Army,* 135 App. Div. 268); to a fraternal order (*Benevolent & Protective Order of Elks* v. *Improved Benevolent & Protective Order of Elks,* 205 N. Y. 459) and to a university to prevent the use of a very similar name in business enterprise (*Trustees of Columbia Univ.* v. *Axenfeld,* 136 Misc. 831).

Had Cornell firmly insisted that the baker should not use " Cornell " at all in selling this bread evolved at the university we would have no great difficulty in sustaining the injunction in full ambit. But the university left open, or seemed to be leaving open, to the baker a limited use of the name " Cornell " during a time when the baker was extensively investing in the commercial promotion of the product; and the differences between the use permitted by the judgment and the use which the baker had made do not all seem to be so substantial as to justify in some of its details the interference set up by the judgment.

How the judgment ought to be cast is to be influenced somewhat by the course of discussion and the intimations of assent by university people which went before the lawsuit. The defendant began a limited production of the bread in 1949, selling it to hospitals and schools; and in 1951 began extensively to advertise it for general public sale as " Cornell " bread. The wrapper contained a banner or pennant containing " Cornell " in white letters on a red background — the university's colors.

In October, 1951, the university requested defendant to stop using " Cornell " in the sale or advertising of the bread. In view of its investment in preliminary exploitation and because it still wanted to use the name " Cornell " defendant sought to avoid this request. There were conferences and correspondence and on November 5, 1951, a letter from an officer of the university, written as a result of talking with the president, expressed the view that while it would prefer no use be made of " Cornell ", if the baker insisted on using it the pennant should be eliminated.

This letter further suggested that the bread be called either " Cornell Formula Bread " or " Cornell Recipe Bread "; that there be a disclaimer of any connection of the university with it under a text proposed in the letter. If these things were acceptable to the baker the letter stated that the officer would recommend approval by the university executive committee.

The resulting correspondence develops the fact that these suggestions were partially, but not entirely, satisfactory to the

baker; but the executive committee shortly before November 23, 1951, adhered to the university policy of not permitting the name to be used in connection with any commercial product and the baker was by a letter of that date requested to discontinue its use.

The use by defendant continued. In some respects, but not in all, it conformed with the outline of utilization that the officer of the university had previously written that he would recommend to the executive committee. Six months later, on May 16, 1952, the trustees of the university issued a formal memorandum covering broadly the use by the public of the bread formula and prescribed the terms under which the formula could be attributed to Cornell and the name '' Cornell '' used in promotion.

The memorandum stated that any baker might use the phrase '' Cornell Formula Bread '' in letters not more than one-half inch high, printed on both sides of the wrapper, if the wrapper also contained the name of the baker '' in larger letters '' and as a '' more prominent feature of the wrapper '' than the phrase containing '' Cornell ''; if both the formula and a disclaimer of university connection also be printed; and if '' no pennants, flags, or other devices or symbols or words indicative of a college or university except as above authorized '' be used.

There are some ways in which the weight of the injunction ought to be lightened somewhat in its effect on the baker when this correspondence and the negotiations between the parties are looked at in their entirety.

The baker, it will be recalled, started out by using the term '' Cornell Bread '' and the letter of November 5, 1951, from the university officer on the recommendations he would make to the university committee suggested that instead of '' Cornell Bread '', either '' formula '' or '' recipe '' or '' type '' be placed between '' Cornell '' and '' bread ''.

Defendant used '' recipe ''; the memorandum of May, 1952, required the use of '' formula '' instead, and the judgment imposes the same requirement. The differences between these two words used in this context are not impressive and are semantic in a rather restricted technical sense. One has to think twice about it to sense the distinction between the two words as they are thus used. All this does not seem to us to present a good ground to move a court in equity to impose by its judgment on the baker a change in a way of selling its product which in this respect, at least, can make no real difference to the university.

The university memorandum of May, 1952, required that the printing of '' Cornell '' be in letters not more than one-half inch high and this has been followed by the baker, but the judgment

imposes some additional requirements as to alignment of words and as to black and block lettering. The 1952 memorandum required the name of the baker to be in "larger" letters and a "more prominent feature" of the wrapper than the name of the bread. In its actual utilization the baker's name was printed one and one-half times as large as the name of the bread. The judgment requires it be twice as large. In respect of the size of lettering, we think also the judgment projects too far into the minute regulation of a commercial practice which, in this respect, could be regarded as meeting the university's requirements.

From the beginning of its contact with the university the baker could see that there was objection to the use of a pennant carrying the word "Cornell". Why the university objected to this would be readily apparent; and although all the letter of November 5, 1951, said was to "eliminate the pennant" and all the university memorandum of May 16, 1952, said was that the wrapper should contain no "pennants, flags, or other devices or symbols or words indicative of a college", still the use of the scroll could reasonably be regarded by the court as coming within the scope of what ought to be ruled out of usage in connection with exploiting "Cornell".

It is not necessary to dissect what is meant by "other devices or symbols" to spell out the fact that if a pennant can be deemed objectionable so can a scroll used in quite the same way. In any event the view of the Special Term that it ought to be enjoined seems reasonable enough. We would, however, give the defendant six months from the entry of judgment, which we regard as sufficient time, to make the adjustments needed to change its wrapper, and given such time the burden of change should not be either too expensive or harmful to its business. The judgment as it touches the registration of the trade-marks ought to permit the use of "Cornell Recipe Bread".

The judgment should be modified in the respects described in this opinion, without costs; and, as thus modified, affirmed; and the order should be settled.

Foster, P. J., Coon, Imrie and Zeller, JJ., concur.

Judgment modified, on the law and the facts, in accordance with opinion and, as thus modified, is affirmed, without costs.

Settle order.