JOHN ROBERTS MANUFACTURING COMPANY, Plaintiff-Appellant,

v.

UNIVERSITY OF NOTRE DAME DU LAC, Defendant-Appellee.

No. 12157.

United States Court of Appeals Seventh Circuit.

Aug. 15, 1958.

Gerald A. Kamm, South Bend, Ind., W. Houston Kenyon, Jr., New York City (Kenyon & Kenyon, New York City, Doran, Manion, Boynton & Kamm, South Bend, Ind., of counsel), for appellant.

Louis C. Chapleau, Eugene C. Knoblock, South Bend, Ind., for appellee.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiff by this action, predicated upon the Declaratory Judgment Act (Title 28 U.S.C.A. Sec. 2201), sought a judgment declaring that the sale of its "Notre Dame Class Rings" did not constitute unfair competition with or invade any property right of defendant. Defendant answered the complaint and interposed four counterclaims. Counts 1 and 2 alleged unfair competition on the part of plaintiff; count 3, application of a false description of goods in violation of Sec. 43 (a) of the Lanham Act (Title 15 U.S. C.A. Sec. 1125(a)), and count 4, infringement by plaintiff of three trademark registrations granted to defendant under The Indiana Trade-Mark Act (Acts of 1955, Ch. 174). Plaintiff by its answer denied the material averments of the counterclaims.

The case was tried by Honorable W. Lynn Parkinson, then a District Judge, who filed an opinion, together with findings of fact and conclusions of law.

John Roberts Mfg. Co. v. University of Notre Dame Du Lac, D.C., 152 F.Supp. 269. Based upon its opinion, findings and conclusions, the trial Court, on June 27, 1957, entered its judgment and decree, holding in favor of defendant on the issue of unfair competition. The Court made no decision on the issues raised by counts 3 and 4 of defendant's counterclaims. The judgment and decree provided in material part:

> "That the Plaintiff be, and it is hereby perpetually enjoined from using the words 'University of Notre Dame' and the official seal and identifying symbols of the defendant in connection therewith, on any ring manufactured by the plaintiff and from the sale and disposition thereof."

It is from this judgment and decree that plaintiff appeals.

Reference to the opinion, findings and conclusions of the District Court obviates the necessity here for a detailed statement of the facts. Of the thirty-three findings entered by the District Court, plaintiff challenges only 15, 21, 26, 27, 28, 29, 30 and 31. The conclusion which we have reached as to the proper disposal of this appeal renders plaintiff's challenge to the findings above enumerated of minor importance. In other words, our conclusion may well rest upon the undisputed facts of the case.

Plaintiff is a Delaware corporation, engaged in the manufacture of jewelry, with its office and principal place of business in Norman, Oklahoma. Defendant is a non-profit charitable, religious and educational institution, organized in 1844 by a special Act of the Indiana legislature, with power to award degrees in arts, sciences, law and medicine, and do all acts necessary for the promotion of the arts and sciences and the prosperity of the University (Acts of 1937, Ch. 227, p. 1109). It has a student enrollment of some six thousand, with a faculty of six hundred and forty. Its alumni number between twenty-five and thirty thousand. The University is de-

pendent upon Foundations and major industries for financial help, and also upon income from athletics, the book store and stadium concessions, as the student fees represent only about 70% of its operational cost. For more than a century it has been recognized as one of the outstanding universities of this country, and perhaps of the world. By much effort and large expenditures it has attained great prestige.

The "Dome," a part of the main building of the University campus, is gilded with gold leaf and is well known throughout the United States as a symbol of the University. In 1930, the University adopted a seal which is used extensively on its publications, diplomas and in connection with many other of its activities. The seal is well known and symbolic of defendant. For more than fifty years, the University has used as a symbol a monogram consisting of the letters "N" and "D" in a superimposed position. In 1930, the University caused to be designed an official Notre Dame ring, which was approved for manufacture and sale on behalf of the University. It bore defendant's name, "University of Notre Dame," a representation of the seal, a view of the "Dome," and the Notre Dame monogram in a definite collocation. Defendant was the sole and exclusive source of supply of the Notre Dame ring until plaintiff commenced the manufacture and sale of a ring which is almost an exact duplicate. It has been the policy of the University for many years to limit the sale of the official Notre Dame ring to juniors, seniors and alumni of the University. To persons thus qualified it has sold in excess of one thousand rings per year. Defendant has expended large sums of money in popularizing its official ring.

In the fall of 1955, Robert Waugh, an officer of the plaintiff corporation, wrote two letters to the University for the purpose of purchasing an official ring. The letters were written on plain white stationery and signed "Bob Waugh," with only a post office box number as return address. The letters were false and deceitful in that they misrepresented the real purchaser and indicated that Waugh intended to give the ordered ring as a gift, which false representations were made to induce the sale. After plaintiff obtained such official ring it made an impression of its design and used such impression in the design of the ring which it thereafter manufactured and sold. Manufacture and sale of plaintiff's ring was commenced by it in January, 1956. Its ring bore the name, "University of Notre Dame," a representation of the seal, a view of the "Dome," and the monogram of the University in the same collocation as the official Notre Dame ring.

Shortly thereafter, plaintiff appointed a partnership, Royal Hawaiian Jewelers, as its exclusive sales agent in South Bend, Indiana, one of the partners of which was Raymond L. Roy, a graduate of the University and a former employee of the University book store where the official Notre Dame ring was sold. Through this partnership plaintiff sold, up to February 1957, 479 of its rings and, since then, approximately 200 more. Plaintiff in its sales literature recognized the University's policy of limiting sales of the official Notre Dame ring to juniors, seniors and alumni, but violated the policy by selling a majority of its rings to sophomores.

Thus, we have a situation where plaintiff in the manufacture and sale of a competing commercial product used not only the principal part of defendant's corporate name but also its seal, view of the "Dome" and monogram, all employed in a collocation which made plaintiff's ring an almost exact duplicate of defendant's.

The trial Court in its opinion announced a proposition of law which constituted the main premise for its decision and which, if sound, is dispositive of the issues argued on this appeal. The Court stated (152 F.Supp. 269, 271):

"The effect of assuming a name by a corporation under the law of its creation is to exclusively appropriate

it as an element of the corporation's existence and the use of the name of a corporation on merchandise manufactured by another for sale in competition with the same type of merchandise of the corporation would not only be actual deception and create actual confusion but would of itself constitute a passing or palming off of its merchandise for that of the corporation, the name of which it is wrongfully using, and would be a most flagrant violation of the law of unfair competition."

In our judgment, the statement embodies a correct principle of law and, notwithstanding plaintiff's argument to the contrary, is supported by authority. Certainly it is supported by logic and common sense. Plaintiff, in our judgment, had no more legal right to appropriate defendant's corporate name and use it in connection with the manufacture and sale of rings than it had to purloin cash from defendant's safety box. As the Court stated in Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 627, 35 L.Ed. 247:

"A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property."

We shall first cite and discuss some of the cases which support the pronouncement of the trial Court. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317, is much to the point. While in that case the action was against the Commissioner of Patents to enforce registration of a trade-mark, the reasoning of the Court cannot be distinguished on that basis because it (269 U. S. at page 379, 46 S.Ct. at page 162) approached the problem "by first considering certain principles of the substantive law of trade-marks and unfair competition * * *." In this connection the Court stated (269 U.S. at page 380, 46 S.Ct. at page 162):

"The effect of assuming a corporate name by a corporation under the law of its creation is to exclusively appropriate that name. It is an element of the corporation's existence."

On the following page the Court stated:

"The general doctrine is that equity not only will enjoin the appropriation and use of a trade-mark or trade-name, where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity, to the injury of the corporation to which the name belongs. [Citing cases.]"

In Stork Restaurant, Inc., v. Sahati, 9 Cir., 166 F.2d 348, 353, the Court stated:

"The property right in a trade name will be recognized perhaps even more readily when, as here, it embodies the distinctive part of the owner's corporate name."

In Standard Oil Co. of New Mexico, Inc., v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, 977, the Court stated:

"By the prior lawful entry into a field under a legally adopted name, and by prior appropriation and use thereof, a corporation acquires a right to such name which the law will recognize and protect. [Citing the Robertson and many other cases.]"

Again, the Court on the following page stated:

"A corporate name or trade name identifies a corporation; it also identifies its business and the goods or services which it sells or renders. If a junior corporation appropriates such name or a name so similar thereto as to lead to confusion, it appropriates the reputation that goes with it and removes that reputation beyond the power of the owner to protect. Unless the junior's business is so foreign to the

senior's as to insure against the public confusing the two, it is unlawful. [Citing cases.]"

In S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 116 F.2d 427, 429, the Court stated:

"Therefore it [plaintiff] invokes the doctrine that when a good will is established under the owner's name, given or assumed, he may protect it, not only against the competition of those who invade his market, but also against those who use the name to sell goods near enough alike to confuse his customers. We have often so decided * * *."

Jewel Tea Co., Inc., v. Kraus, 7 Cir., 187 F.2d 278, and Metropolitan Opera Ass'n, Inc., v. Metropolitan Opera Ass'n of Chicago, Inc., D.C., 81 F.Supp. 127, are also cases where the Court enjoined a defendant from the use of plaintiff's corporate name.

The only case called to our attention wherein the corporate name was that of a university is Cornell University v. Messing Bakeries, Inc., 285 App.Div. 490, 138 N.Y.S.2d 280, affirmed 309 N.Y. 722, 128 N.E.2d 421. In that case the Court enjoined defendant from using the name "Cornell" in the marketing of its bread, notwithstanding that the parties were engaged in non-competitive fields. The Court stated (138 N.Y.S.2d at page 282):

"The theory underlying injunctive interference is that an educational institution which has won large public prestige by hard effort and at high cost ought not, against its will, have that prestige diluted by a commercial use of its name, suggesting connection or benefit to the institution from the enterprise."

Plaintiff, in support of its argument that the principle of law announced by the trial Court (heretofore quoted) is erroneous, cites three cases: Deister Concentrator Co. v. Deister Mach. Co., 63 Ind.App. 412, 112 N.E. 906, 114 N.E. 485; Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F.2d 122, and

Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. These cases, if they have any bearing on the issue under discussion, detract from rather than support plaintiff's position. As a prelude to its argument on this point, plaintiff suggests that the words, "University of Notre Dame," possess an ordinary meaning. Assuming such to be the case, they are not descriptive words of a product as that phrase is used in the law of unfair competition. They constitute defendant's corporate name which it, as previously shown, acquired a proprietary right to use and enjoy. The immaterial suggestion is made that "Notre Dame" is the name of a post office located in St. Joseph County, Indiana. It is evident, of course, that the University did not take its name from the post office but that the latter acquired its name from the University, no doubt with its consent and approval.

We now return to the cases relied upon by plaintiff (heretofore cited). In the Deister case, a person by that name had done business under the corporate name of Deister Concentrator Company, with which he severed his connections and sold his stock. Subsequently, he and other members of his family incorporated the Deister Machine Company, and this corporation, as well as the individual, was charged with unfair competition. Thus, there was a situation where the corporate name of both plaintiff and defendant embodied the same family name. The Appellate Court of Indiana held that the name "Deister" in the new corporation did not of itself confer any right upon plaintiff to injunctive relief. The Court reasoned that a man's name is his own property and he has the right to its use and enjoyment the same as any other property right, providing he uses it honestly and in such a manner as not to injure the good will and reputation of a rival by palming off his goods or business as that of such rival. In the instant case, the shoe is squarely on the other foot. Here, it is the University which has acquired a property right in its corporate name. It is the plaintiff which

seeks to do business not under its own corporate name, as was the situation in Deister, but under that of the University. Deister is one of numerous cases where it has been held that a newcomer in the field has a right to use its own name, providing it does so in such a manner that confusion or palming off will not result. See Standard Oil Co. of New Mexico, Inc., v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, and Stork Restaurant, Inc., v. Sahati, 9 Cir., 166 F.2d 348. Obviously, such cases are of no aid to plaintiff's contention in the instant situation.

In the Steem-Electric Corp. case, the product involved was an electric steam iron which, as the name indicates, is heated by electricity and generates steam from water contained in a chamber within the iron. This Court's opinion in that case rests on the premise that plaintiff's corporate name was merely descriptive of the product involved. Under such circumstances we held that plaintiff was not entitled to the award of an injunction absent proof that its descriptive corporate name, when applied to a product, had acquired a secondary meaning. The reasoning in that case is without relevancy here. It borders on the preposterous to claim that the words, "University of Notre Dame," are descriptive of the product (ring) manufactured and sold by plaintiff.

The decision of the Supreme Court in Kellogg Co. v. National Biscuit Co. is likewise irrelevant, in the main for the same reason. In that case, plaintiff sought to enjoin use by defendant of its trade name, "Shredded Wheat." In short, the Court held that the name was descriptive of the product involved and for that reason was not susceptible of monopolization, and that plaintiff was entitled to relief only by showing that its trade name had acquired primary significance as that of the producer rather than of the product. This case furnishes no support to plaintiff's contention in the instant case.

Plaintiff cites many cases which have held under a variety of circumstances that proof of secondary meaning is a prerequisite to the right to enjoin alleged unfair competition. All of such cases, with the possible exception of Rader v. Derby, 120 Ind.App. 202, 89 N.E.2d 724, 726, are readily distinguishable from the instant situation because in none did the accused manufacture or sell its product under the name of the accuser. No good purpose could be served in the citation or discussion of these cases other than those from this jurisdiction, that is, this Circuit and the State of Indiana.

Plaintiff in its brief commences the discussion of this phase of the case by stating, "In Indiana the law is that 'secondary meaning' must be established before another's copying of unpatented symbols or physical attributes of goods will be enjoined on grounds of unfair competition." The Indiana Rader case is cited in support of this statement. This case is a two-edged sword so far as plaintiff is concerned. Rader, doing business under the name, "Old Hickory Paddle Company," was engaged in the manufacture and sale of a fraternity paddle. Derby later became engaged in the manufacture and sale of the same product under the same name as that used by Rader. In an action by Rader for unfair competition, the trial Court enjoined Derby "from using any advertisement, card or other device, in which the words, 'Old Hickory' or 'Old Hickory Paddle Company,' appear." The trial Court refused to enjoin Derby from manufacturing paddles of the same dimensions as those manufactured and sold by Rader, and from the use of certain Greek letters which appeared on Rader's paddles, on the theory that Rader had no monopoly upon the size of his paddles or upon the Greek alphabet, some of the letters of which were stamped thereon. The holding of the trial Court was affirmed by the Appellate Court of Indiana and is consistent with the general rule that a party is without right, in the absence of consent, to take and use the name of another party, corporate or

otherwise, in connection with the manufacture or sale of a competing product.

In Sinko v. Snow-Craggs Corp.. 7 Cir., 105 F.2d 450, relied upon by plaintiff, this Court denied injunctive relief for failure of proof of necessary elements of secondary meaning in the shape and design of a steering wheel knob. The defendant manufactured and sold the competing product under its own name. It is hardly open to doubt that the decision in that case would have been different if the accused had manufactured and sold its product under the name of the accuser, as was done in the instant case. Other cases cited and relied upon by plaintiff are likewise distinguishable.

As previously shown, plaintiff, without consent of defendant, was without legal right to take and use the latter's name, seal and monogram in the manufacture and sale of its ring. Such use by plaintiff was unlawful and constituted unfair competition as a matter of law. Under such circumstances it was not necessary for plaintiff to offer proof of or for the Court to find a secondary meaning. Confusion, or at least the likelihood of such, and a purpose on the part of plaintiff to palm off its product as that of defendant, are self-evident. Such being the case, we find it unnecessary to discuss the findings of the trial Court of which plaintiff complains.

It follows from what we have said that the judgment and decree under attack must be affirmed on the basis that plaintiff engaged in unfair competition. This leaves undisposed of the issues raised by counts 3 and 4 of defendant's counterclaims, together with plaintiff's answer thereto, based on a violation of the Lanham Act and the Indiana Trade-Mark Act. We recognize this is not a desirable situation but, at the same time, we do not think we should decide those issues when they were not decided by the trial Court. Moreover, there is no necessity for so doing because the judgment and decree is adequately supported otherwise. We think that a disposal of the issues raised by counts 3 and 4 is a proper matter for action by the District Court, either with or without the consent of the parties.

The judgment and decree appealed from is

Affirmed.