The **HOBART MANUFACTURING COMPANY, Plaintiff,**

v.

**KITCHEN AID SERVICE, INC., and Harold Cohen, individually and doing business as Seaview Appliance, Defendants.**

**No. 62 C 739.**

United States District Court
E. D. New York.

Sept. 21, 1966.

Gerald W. Griffin, and R. Bradlee Boal, New York City (Cooper, Dunham, Dearborn & Henninger, New York City, of counsel), for plaintiff.

Edward H. Burger, New York City, for defendants.

## MEMORANDUM

DOOLING, District Judge.

Since 1948 plaintiff has manufactured and marketed through established, independently owned regional appliance distributors and local dealers a popular dishwasher indentified as "KitchenAid". Starting with its use on other articles in 1919, plaintiff has effected a series of registrations of KitchenAid shown always as written without a space between the component words. The registrations for dishwashers on the Principal Register, and the more recent service mark registration on the Principal Register, are in plain type but exhibit modest stylistic peculiarities. Defendant Cohen had been an "authorized" KitchenAid dealer whose distributor had terminated him as a dealer. Soon afterward defendant Cohen, who at all times since has conducted his business as a sole proprietorship, had a New York corporation formed with the name "Kitchen Aid Service, Inc." which performed no function whatever but defendant Cohen used that corporate name for listings in the white pages of the local telephone directories. In the yellow pages he inserted a display advertisement that featured the Kitchen Aid name; "Kitchen Aid Service" was featured, too, on defendant Cohen's panel truck and on the uniforms

that defendant Cohen and his men wore on service calls. The repair service defendant Cohen performed fell far short of the standards expected by plaintiff and its regional distributor of authorized dealers. There is no doubt that defendant Cohen's course of conduct was calculated to and did mislead Kitchen Aid owners into engaging his services in the belief that he was identifiable with plaintiff or had plaintiff's sponsorship.

■ It has been concluded, after trial, that defendants' conduct infringes plaintiff's rights and must be permanently enjoined. Findings of fact have been separately made.

It is argued that defendants have not used plaintiff's trade mark precisely, since they have varied the type-style and separated it into two words, and that, in any case, the trade mark is too undistinguished in appearance and too wanting in requisite trade mark fancifulness to warrant legal protection. If the argument might have force in other and innocent circumstances, on the facts it is altogether clear that defendants here exactly and successfully trespassed on just that area of unmistaken identifications of the word "KitchenAid" with plaintiff that did exist, and that defendants capitalized on that identification intentionally by causing confusion between defendants and those dealers properly identified as KitchenAid dealers through using a colorable imitation of the identifying word.

Defendants are not in competition with plaintiff but with distributors and dealers in the area who extend a repair service. Defendants' practices hurt plaintiff by denying to it (indirectly) a market for sales of replacement parts—for defendants used rebuilt parts on many occasions and "authorized" dealers are expected to use factory-new parts. Defendants' practices also hurt plaintiff by associating it with an inferior repair service that counteracted the goodwill generally attaching to plaintiff and its product.

It is doubtful that the first element of harm is legally significant in the absence of evidence, not here reliably present, that defendants "palmed off" their rebuilt parts as plaintiff's KitchenAid factory-fresh parts. Without evidence of that order it would not appear that defendants' obtaining the service call deceitfully can give plaintiff a claim for lost replacement-part sales: there is no evidence that rebuilt parts are, *per se*, inferior; the "loss" of replacement sales, if any, is not a proximate consequence of the unfairness of the competition, or of any trade mark infringement, but, for all that has been made to appear, is an index of a proper economy that plaintiff has no legally protected interest in preventing.

The second kind of harm, that flowing from associating plaintiff with an inferior repair service, furnishes the basis of relief, aided, perhaps, by the consideration that the defendants simply may not fairly display in stolen plumage. Since plaintiff has not been shown in this case to furnish a repair and maintenance service under the KitchenAid designation or otherwise, the registration of the word as a service mark is irrelevant. National Trailways Bus System v. Trailway Van Lines, Inc., E.D.N.Y.1963, 222 F.Supp. 143; 15 U.S.C.A. § 1053. Nor is there any evidence that KitchenAid is entitled to protection as a collective or certification mark. 15 U.S.C.A. § 1054. Compare Community of Roquefort v. William Faehndrich, Inc., 2d Cir. 1962, 303 F.2d 494; Huber Baking Co. v. Stroehmann Bros. Co., 2d Cir. 1958, 252 F.2d 945. But recognition that defendants are not making infringing sales of a kind of service that plaintiff sells under a service mark, and that defendants are not making infringing sales of a kind of goods that plaintiff sells under a trade mark, does not end the matter. Plaintiff has a right to be free of the corrosive effect of defendants' inferior service performance on the good will connected with plaintiff's business and associated with the trade mark KitchenAid that it uses on its products when, as here, it is made to appear that defendants gain the chance to render the damagingly inferior service

by the false pretense of a connection with plaintiff, or of sponsorship by plaintiff.* Akron-Overland Tire Co. v. Willys-Overland Co., 3rd Cir. 1921, 273 F. 674; Yale Electric Corp. v. Robertson, 2d Cir. 1928, 26 F.2d 972, 973–974; Horlick's Malted Milk Corp. v. Horluck's, Inc., 9th Cir. 1932, 59 F.2d 13; Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2d Cir. 1956, 234 F.2d 538; Flexitized Inc. v. National Flexitized Corporation, 2d Cir. 1964, 335 F.2d 774, 781–782; Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., 2d Cir. 1965, 349 F.2d 389, 392, 395. Volkswagenwerk, A. G. v. Dreer, E.D.Pa.1966, 253 F.Supp. 37, 42–43.

That the corporate name was "open" in New York, so that defendants were able to occupy it, is quite beside the point. It emphasizes that defendants' trespass is not on the corporate name of plaintiff but on the good will associated with its trade marked products. See Colonial Radio Corp. v. Colonial Television Corp., S.D.N.Y.1948, 78 F.Supp. 546, 549–550.

■■ The evidence will not support a charge of disparagement of product. Defendants' remarks were in a broad sense disparaging, but they were so general and so little subject to objective evaluation that they are insufficient to constitute specifically damaging falsehoods. Some license to belittle attached to defendant Cohen's position as the seller of a competitive product. See Prosser, Torts, 3d ed. 1964, 943.

■ There remains the question of relief. Injunctive relief is, of course, proper and will forbid continued use of the corporate name of Kitchen Aid Service, Inc. and any conduct on defendant Cohen's part that suggests a connection with or sponsorship, approval or authorization by plaintiff. The circumstances of the defendants' conduct make it appropriate that plaintiff recover a reasonable attorneys fee, despite the formidable decision in the Ninth Circuit in Maier Brewing Co. v. Fleischmann Distilling Corp, 9th Cir., 1966, 359 F.2d 156.

■ The parties, in the pre-trial order, decided that damages, if any, were to be determined by an accounting following determination of the other issues. In such a case as this the kind of money compensation that can fairly be said to measure the wrong is extraordinarily difficult to define. Plaintiff has not been considered entitled to defendants' profits as in the ordinary case of infringement; that sort of profits accounting would be appropriate for one whose business it was to render the same service. Cf. Triangle Publications v. Rohrlich, 2d Cir. 1948, 167 F.2d 969. The indirect profit in repair parts, for reasons already indicated, is not an appropriate measure of damages. General damages for diminution in good will would appear difficult to admeasure. Cf. Admiral Corp. v. Penco, Inc. W.D.N.Y. 1952, 106 F.Supp. 1015, aff'd, 2d Cir. 1953, 203 F.2d 517. Rather than direct an accounting before a master on unframed issues of profits or damages, the best course appears to be to order an accounting before the Court in the first instance and, as a first step in such accounting, to require plaintiff to propound a set of interrogatories in accounting exactly defining the method by which the plaintiff conceives that the defendants are to determine the amounts for which plaintiff claims that the defendants are accountable. To such interrogatories defendants can then object as provided in Rule 33, and the theory of the account, if any is appropriate, can be determined on the objections. Cf. Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., supra.

---

* New York is notable, through its "dilution" doctrine, for extending remedies against unpermitted uses of trade names. See Checker Cab Mfg. Co. v. Sweeney, N.Y. Co.1922, 119 Misc. 780, 197 N.Y.S. 284; Dior v. Milton, N.Y.Co.1956, 9 Misc.2d 425, 155 N.Y.S.2d 443, aff'd 2 A.D.2d 878, 156 N.Y.S.2d 996; Cue Publishing Co. v. Colgate-Palmolive Co., N.Y.Co.1965, 45 Misc.2d 161. 256 N.Y.S.2d 239, aff'd 23 A.D.2d 829, 259 N.Y.S.2d 377; Cornell University v. Messing Bakeries Inc., 3rd Dept.1955, 285 App.Div. 490, 138 N.Y.S. 2d 280, aff'd 309 N.Y. 722, 128 N.E.2d 421; cf. General Business Law, Sec. 368–d; Penal Law, § 964.