The **COCA–COLA COMPANY, a corporation, Plaintiff,**

v.

**GEMINI RISING, INC., Defendant.**

**Civ. A. No. 72 C 194.**

United States District Court,
E. D. New York.

July 24, 1972.

**1186**

Weil, Lee & Bergin, by Alfred T. Lee, New York City, Julius R. Lunsford, Jr., Fred G. Stowers and James W. Young, III, Atlanta, Ga., for plaintiff.

Seymour Barash and Frederick Johnson, New York City, for defendant.

### MEMORANDUM AND ORDER

NEAHER, District Judge.

The Coca-Cola Company brings this action to enjoin defendant from printing, distributing and selling commercially a poster which consists of an exact blown-up reproduction of plaintiff's familiar "Coca-Cola" trademark and distinctive format except for the substitution of the script letters "ine" for "-Cola", so that the poster reads "Enjoy Cocaine." Jurisdiction is based on 28 U.S.C. §§ 1338 and 1332.

Plaintiff has moved, pursuant to Rule 65(a), F.R.Civ.P., for a preliminary injunction restraining defendant from further sale of the poster pending trial on the merits. Defendant opposes the motion asserting that the court is without jurisdiction of the subject matter on any cognizable ground and contending that, in any event, there is no trademark infringement, no proof of any damage to plaintiff and no basis in statutory or common law for injunctive relief. Additionally, defendant contends that its copyright on the poster precludes issuance of an injunction; that such relief would raise serious First Amendment questions; and that plaintiff has been guilty of laches in delaying suit for some 15 months. Initially defendant raised an objection to venue but withdrew it after plaintiff adduced sworn testimony that the poster is currently being sold in this district.

From the pleadings, affidavits and other papers submitted by the parties, the following facts appear to be incapable of substantial dispute. Plaintiff is a Delaware corporation with its principal place of business in Atlanta, Georgia. Since prior to 1893 it has manufactured and sold a soft drink beverage under the trademark "Coca-Cola" and has continuously and extensively employed the trademark in connection with its business to the present time. Three federal trademark registrations pertaining to "Coca-Cola" have been obtained by plaintiff— No. 22,406 issued January 31, 1893, No. 47,189 issued October 31, 1905, and No. 238,145 issued January 31, 1928. Each registration statement specifies either "beverages" or "beverages and syrups" as the class of merchandise to which the trademark is appropriated. The registrations have been renewed from time to time and are currently in full force and effect. Two of them, Nos. 47,189 and 238,145, have become incontestable pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq. The trademark is also registered in the State of New York.

Since the original registration in 1893 plaintiff has displayed the trademark "Coca-Cola" in distinctive stylized script lettering with the lower portion of the "C" in "Coca" extending under the remaining letters in the form of a curved dash. In the traditional print format, the word "Enjoy" appears above "Coca-Cola" and below it, the word "Trademark" followed by "R" in a circle. In more recent years a sweeping white curved band has been added below "Coca-Cola". The trademark as so described has been widely presented to the public in white lettering against a bright red background in advertising of all kinds, e. g., magazines, newpapers, billboards, dis-

play materials, television, truck panels and the like.[1]

Defendant is a New York corporation with its principal office and place of business in New York County. It is engaged in the business of creating, printing, distributing and selling commercially posters of various kinds. In November 1970 defendant "created" and began the sale of the poster which reproduces plaintiff's distinctive trademark and format as previously described. The poster is approximately two feet by three feet in size and printed in the same white lettering on a bright red background as plaintiff employs.[2]

Defendant admits it has sold over 100,000 copies of the "Enjoy Cocaine" poster throughout the United States since November 1970. A purchase of the poster was recently made in this district at a retail price of $2.00. It is a fair inference, therefore, that defendant is deriving substantial revenue from their sale.

Defendant filed the poster and a notice in the United States Copyright Office on May 4, 1971, and, following a copyright application, obtained a "Registration of Copyright" numbered K 94714 dated July 15, 1971. On February 8, 1972, upon learning of plaintiff's intention to bring this suit, defendant filed a changed copy of the poster with the United States Copyright Office. De-

fendant concedes that the new poster is in all respects the same as the former poster with one exception, i. e., "Trade-Mark" has been changed to "Raid-Mark".

Defendant does not and could not seriously deny that it is deliberately imitating plaintiff's trademark in its "Enjoy Cocaine" poster. Although it contends that the word "Coca-Cola" as such does not appear anywhere on the poster one would have to be a visitor from another planet not to recognize immediately the familiar "Coca" in its stylized script and accompanying words, colors and design. Indeed, defendant's assertion that "the poster was intended to be a spoof, satirical, funny, and to have a meaning exactly the opposite of the word content"[3] would be meaningless except in the context of an immediately recognizable association with the "Coca-Cola" trademark. This is buttressed by the only change made in the new poster, i. e., "Raid-Mark" in place of "Trade-Mark" —a clear indication of defendant's predatory intent, however humorous defendant considers it. But whether such an unauthorized use of plaintiff's trademark warrants injunctive relief in these novel circumstances is another matter, to which we now turn.

▮ To obtain injunctive relief pendente lite in a trademark case a plaintiff must show a reasonable probability of success at trial or at least raise

1. Plaintiff states that in the past 40 years well over a half-billion dollars has been spent in media advertising for "Coca-Cola". Even before that vast expenditure, the trademark had become so widely known that the Supreme Court was moved to note:

   The name now characterizes a beverage to be had at almost any soda fountain. It means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink. Coca-Cola Co. v. Koke Co., 254 U.S. 143, 146, 41 S.Ct. 113, 114, 65 L.Ed. 189 (1920).

   Indeed, "Coca-Cola" has been described as "one of the three most-recognized trademarks in the world. The other two are

   'B.V.D.' and 'Singer'." The Business Lawyer, November 1971, at 309, n. 51.

2. Each is imprinted with the legend "C" in a circle followed by "1970 Gemini Rising Inc." on the lower edge of the white curving band at the righthand margin of the poster. On those sold prior to this suit the letters of the legend are approximately 1/8 inch in height. On a "new" poster sold after suit was begun the letters of the legend are approximately 1/4 inch in height except for the name "Gemini", which is approximately 3/8 inch in height. Added to the new poster is the address "7 W. 57th Street. N.Y.C." and "Trade-Mark" has been changed to "Raid-Mark".

3. Affidavit in Opposition of defendant's president, Steven Werner, p. 5.

"questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation" with a tipping of "the balance of hardships . . . decidedly toward plaintiff" even though a strong likelihood of success is not demonstrated. Omega Importing Corp. v. Petri-Kine Camera Company, 451 F.2d 1190, 1193 (2 Cir. 1971), quoting from Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2 Cir. 1953). A district court, moreover, is instructed not to determine serious issues with respect to trademarks "on an incomplete showing by way of affidavits . . . in the absence of clear proof of necessity for interlocutory injunctive relief." 451 F.2d at 1194, n. 5, quoting from Cerruti, Inc. v. McCrory Corp., 438 F.2d 281, 284 (2 Cir. 1971).

■ Although no evidentiary hearing has been held, the court is satisfied from the affidavits and exhibits submitted by both parties that plaintiff has made a sufficiently clear showing of need for immediate protection of its trademark and business reputation to warrant preliminary injunctive relief. While, to borrow Chief Judge Friendly's apt phrasing, "[t]he case bristles with difficult questions of trademark law," *Cerruti, supra,* at 283, unlike *Cerruti,* the source of plaintiff's claimed irreparable injury has not been removed but is increasing by every "Enjoy Cocaine" poster which rolls off the press.

The record before the court, as already indicated, establishes beyond dispute plaintiff's ownership and registration of its widely known trademark, which is also the dominant element of its corporate trade name. There can be no question that the mark is valid and worthy of protection. "The mere fact of registration . . . creates a strong presumption of validity, a presumption which in this case stands unrebutted by any of the evidence presented on behalf of defendant." Miss Universe, Inc. v. Patricelli, 271 F.Supp. 104, 108 (D.Conn.1967),

aff'd per curiam 386 F.2d 997 (2 Cir. 1967) ; see also 408 F.2d 506 (2 Cir. 1969).

■ Defendant does not really challenge this. Its position is simply "that the protection of the trademark law does not extend to this particular situation, since there is no attempt by the defendant to sell merchandise similar to the plaintiff's ; nor is there any reasonable likelihood, considering the nature of the poster, that anyone could or would be confused as to the origin of the poster ; i. e., that it was either published or authorized by the plaintiff." [4] Although defendant also urges 17 affirmative defenses as barring relief to plaintiff, which are dealt with below, the main thrust of its argument is that defendant is entirely free to deliberately imitate and exploit plaintiff's tradmark and format for its own business purposes so long as it is not done in connection with any goods or services which might be confused with those of plaintiff.

Admittedly the parties are not in competition in the ordinary sense. "But recognition . . . that [defendant is] not making infringing sales of a kind of goods that plaintiff sells under a trade mark, does not end the matter." Hobart Manufacturing Company v. Kitchen Aid Service, Inc., 260 F.Supp. 559, 561 (E.D.N.Y.1966). Here there is no question that both are seeking to attract public attention and patronage for their respective products by the graphic display of a distinctive and widely known trademark. That trademark belongs to and is uniquely identified with plaintiff and its products. Plaintiff's property right in its mark clearly extends to its reproduction and publication in advertising and for other promotional uses regarding its products. In this case defendant's product—a simulated bill poster—is itself one of the common forms of advertising utilized by plaintiff. Hence it is not surprising that plaintiff has received "numerous communications from all over the country" concerning de-

4. Defendant's Memorandum of Law at p. 6.

fendant's poster [5]—a clear indication of public identification of the poster with plaintiff and strong confirmation of the public confusion which defendant contends does not exist.

■ Moreover, defendant's argument that no trespass infringing plaintiff's rights has been committed, because the protected words "Coca-Cola" do not appear in its poster, is disingenuous to say the least.[6] Although "Cola" is missing, "Coca" is recognizably visible, albeit changed into "Cocaine". It is precisely this change plaintiff claims as the source of its grievance and likelihood of injury. Judicial notice may be taken that cocaine is a narcotic drug possession of which for nonmedical purposes is a felonious criminal offense against the laws of the United States punishable by substantial prison terms and fines. See 21 U.S.C. §§ 812, 841. The stringency of those laws reflects the national concern that cocaine —far from being "enjoyable"—is part of the tragic drug problem currently afflicting this nation, and particularly its youth. To associate such a noxious substance as cocaine with plaintiff's wholesome beverage as symbolized by its "Coca-Cola" trademark and format would clearly have a tendency to impugn that product and injure plaintiff's business reputation, as plaintiff contends.[7] In other words, to paraphrase Judge Dooling in *Hobart, supra,* while the argument "that [defendant has] not used plaintiff's trademark precisely . . . might have force in other and innocent circumstances, on the facts it is altogether clear that [defendant] here exactly and successfully trespassed on just that area of unmistaken identifications of the word ["Coca-Cola"] with plaintiff that did exist." 260 F.Supp. at 561.

■ Defendant nonetheless scoffs at the suggestion that the poster "would confuse any person of average intelligence, or even below average intelligence)" and that its "very nature . . precludes anyone from believing that it originates with the plaintiff."[8] That is simply defendant's self-serving *ipse dixit*. The appearance of defendant's name —in relatively small lettering—on the poster does not meet plaintiff's factual proof that some persons of apparently average intelligence did attribute *sponsorship* to plaintiff and discontinued their use of Coca-Cola as an expression of resentment.[9] Not only does visual com-

---

5. Affidavit of Alfred T. Lee, Esq., par. 5. Indeed, such a sophisticated watchdog of consumer interests as the New York City Department of Consumer Affairs recently wrote plaintiff about a consumer complaint concerning the use of "Cocaine Is the Real Thing" on T-shirts. The letter referred to this "encroachment on its [plaintiff's] good name" apparently because of plaintiff's familiar advertising slogan "Coca-Cola Is the Real Thing." Letter to the court from Alfred T. Lee, Esq., dated May 31, 1972, attaching photocopy.

6. Defendant's Memorandum of Law at p. 7.

7. That contention is not a flight of fancy. The name "Coca-Cola" is derived from the Andean coca leaf plant and the African cola nut, extracts of which gave the beverage its flavor. The coca leaf is the source of cocaine. See Webster's Third New International Dictionary. But as the Supreme Court pointed out in Coca-Cola Co. v. Koke Co., *supra,* 254 U.S. 143, at 145–146, 41 S.Ct. 113, there is no cocaine in Coca-Cola.

8. Affidavit of Steven Werner, p. 7; Defendant's Memorandum of Law, p. 16.

9. Plaintiff submitted affidavits of Theresa E. Payeur of Coraopolis, Pa., mother of four children; Eleanor Schano, Action Line Reporter for WIIC TV Channel 11, Pittsburgh, Pa.; Gwendolyn F. Sloan, Rochester, Pa., a freelance photographer for WIIC TV; and V. Byron Williams, News Director of WIIC TV. These show that in late October 1971 Mrs. Payeur observed the "Enjoy Cocaine" poster on sale at Beaver Valley Mall and, finding it offensive, called the Coca-Cola bottler in Pittsburgh to complain about it. She purchased a copy of the poster for $2.28 and brought it to the attention of Action Line Reporter Eleanor Schano in late January 1972. Miss Schano received calls from other persons deploring such advertising and threatening a group boycott of Coca-Cola. She commissioned Miss Sloan to film a background sequence and brought

**1190**

parison of defendant's poster with specimen advertising of plaintiff indicate the likelihood of such a mistaken attribution but recent so-called "pop art" novelty advertising utilized by plaintiff may have served to further the impression that defendant's poster was just another effort of that kind by plaintiff to publicize its product.[10]

At all events, in assessing the probability of confusion "[t]he standard to be employed is the ordinary purchaser, not the expert." *Omega, supra*, 451 F.2d at 1195. And the ordinary purchaser consists of a "vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyse, but are governed by appearances and general impressions." Florence Mfg. Co. v. J. C. Dowd & Co., 178 F. 73, 75 (2 Cir. 1910). Judged by that standard, plaintiff has made a sufficiently clear showing of a high probability of confusion resulting from defendant's use of the "Coca-Cola" trademark format in an advertising context.

Given that showing, "injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows." *Omega, supra*, 451 F. 2d at 1195. That is the likely situation here. Except for the protesting patrons and others referred to in plaintiff's affidavits, it would obviously be difficult, if not impossible, to quantify the effect of defendant's poster upon plaintiff's sales. As plaintiff points out, it expends large sums to induce people to order

Coca-Cola without hesitation or concern in preference to other products. The continued success of plaintiff's business depends upon millions of purchase decisions made daily. The soft drink industry is highly competitive. Many substitute products are available, so that even the slighest negative connotation concerning a particular beverage may well affect a consumer's decision. In this day of growing consumer resistance to advertising gimmicks, a strong probability exists that some patrons of Coca-Cola will be "turned off" rather than "turned on" by defendant's so-called "spoof", with resulting immeasurable loss to plaintiff.[11] In such circumstances injunctive relief is the only adequate remedy if the right to it exists.

Plaintiff asserts the right to protect its mark by injunction on a variety of grounds: defendant's poster unfairly disparages plaintiff's product by falsely associating it with cocaine (first count); defendant's imitation of plaintiff's registered mark is likely to cause confusion or mistake as to the source or sponsorship of the poster and constitutes trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (second count); the poster creates a strong likelihood of injury to plaintiff's business reputation within the meaning of New York's General Business Law, McKinney's Consol.Laws, c. 20, § 368–d (third count); and is per se a libel in its implicit representation that plaintiff is marketing a product containing a dangerous drug (fourth count).

the film to Mr. Williams' attention for telecast on Channel 11. Mr. Williams also received calls from irate members of the public, all of whom attributed the poster to plaintiff and voiced disapproval because of the drug problem.

10. Plaintiff has authorized the use of its logo trademark as a decorative fabric pattern for such clothing items as beach pants and shorts, beach hats, bowling shirts and blouses, sweatshirts, dungarees and aprons and on a variety of other articles in common use including jewelry, portfolios, pocket radios, cigarette lighters, pens and pencils, playing cards, lamps and glasses. Affidavit of George M. Lawson, plaintiff's vice-president and general counsel, Exhs. C–1 through C–19.

11. This probability of loss is not offset by defendant's second supplemental affidavit exhibiting a clipping from the New York Daily News of May 3, 1972, which reported a first-quarter earnings increase of 14%. Affidavit of Seymour Barash, Esq., defendant's attorney, dated May 3, 1972. An earlier supplemental affidavit by the same attorney dated April 20, 1972, exhibited a clipping from The Wall Street Journal of March 7, 1972, which reported that Coca-Cola's 8% *sales* increase for 1971 was the smallest in four years and was the first year since 1967 in which plaintiff's earnings grew faster than its sales.

Little purpose would be served at this juncture by discussing the cases plaintiff cites in support of these several legal theories. They underscore the wisdom of Judge Feinberg's recent comment that "[u]nder what circumstances the owner of a trademark can protect it against use on products other than those to which he has applied the mark is a familiar problem . . . [which] 'does not become easier of solution with the years'." King Research, Inc. v. Shulton, Inc., 454 F.2d 66 (2 Cir. 1972).

Viewing this unusual case on its own facts, the real thrust of plaintiff's claim is that unless defendant's unauthorized use of the "Coca-Cola" trademark and format is enjoined, plaintiff's good will and business reputation are likely to suffer in the eyes of those who, believing it responsible for defendant's poster, will refuse to deal with a company which would seek commercial advantage by treating a dangerous drug in such jocular fashion. Certainly that claim finds support in the reaction of some members of the public as set forth in plaintiff's affidavits, *supra* n. 9. And it points up the special feature of this case already noted; *i. e.*, that defendant's "product"—if it can be considered such—impinges directly upon plaintiff's own advertising use of its mark in a manner which creates confusion and is likely to cause injury to plaintiff even though that may not be defendant's intent.

■ Defendant's intent, however, is immaterial. Where, as here, plaintiff's trademark "has acquired a secondary meaning, it is of no consequence that the defendant did not intend an association with the wares of the plaintiff[s] if that association does in fact occur" (citations omitted). Cue Publishing Co. v. Kirshenberg, 22 Misc.2d 188, 190, 198 N.Y.S.2d 993, 997 (Sup.Ct., N.Y.Co.1960). Nor is it any defense that defendant has appropriated only a portion of plaintiff's

mark. The Supreme Court long ago made this clear in American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317 (1925), declaring at 381, 46 S.Ct. at 162:

> The general doctrine is that equity not only will enjoin the appropriation and use of a trade-mark or trade name where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity to the injury of the corporation to which the name belongs.

Here, as already noted, the resemblance between defendant's poster and plaintiff's trademark format as used in advertising is not only so close as to be virtually identical but obviously deliberately so. "The right of the trademark owner in his mark is the right to be protected with respect to its three functions," one of the three being its use "as a medium of advertisement." 3 Callman, Unfair Competition, Trademarks and Monopolies § 66.3 (3d ed. 1969). Even though in this case there is no confusion of goods or passing off in the strict trademark sense, there is a sufficiently clear showing of the impairment of plaintiff's mark as a selling device because of defendant's use. See Callman, *supra*, § 84.2. The effect of that use as a dilution of plaintiff's trademark rights is certainly a serious question calling for more deliberate investigation.

A further apparently unanswered serious question relates to the applicability of § 368-d of the New York General Business Law, upon which plaintiff relies. That statute by its terms extends injunctive relief to cases of "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name" without regard to the absence of competition or confusion.[12]

12. § 368-d. Injury to business reputation; dilution

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services. Added L.1961, c. 583, eff. Sept. 1, 1961.

Defendant contends that in a case akin to this, Girl Scouts of United States of America v. Personality Posters Mfg. Co., 304 F.Supp. 1228 (S.D.N.Y.1969), which discussed New York authorities, the statute was held to afford no relief against a poster regarded as defamatory of the plaintiff. That case, however, is quite different from this. The Girl Scouts are not engaged in trade and their uniform, insignia and slogan are in no sense trademarks. Judge Lasker, moreover, found no evidence of any confusion, which is clearly not the case here, and all the more so if defendant's poster may be regarded as a "product" for that purpose—another of the unusual questions in this case. Finally, there are numerous New York cases granting injunctive relief to protect one's trade name or mark from another's imitation "in the absence of a threat of confusion as to the source or sponsorship of the goods or services." Sullivan v. Ed Sullivan Radio & T. V., 1 A.D.2d 609, 152 N.Y.S.2d 227 (1st Dept. 1956), and cases cited therein; Tiffany and Company v. L'Argene Products Co., 67 Misc.2d 384, 324 N.Y.S.2d 326 (Sup. Ct., N.Y.Co.1971).

■ There remains the question of whether any of defendant's 17 affirmative defenses bar relief at this stage. Most of them relate to the court's jurisdiction and are now moot by reason of defendant's acceptance of venue. The defense asserting a violation of the antitrust laws because plaintiff brought this action to enjoin defendant's poster is patently frivolous. .

■ So too is the claim that defendant's copyright on the poster defeats plaintiff's right to protect its trademark. The copyright is of questionable validity on its face under the Rules and Regulations of the Register of Copyrights, 37 C.F.R., Ch. II, Parts 201, 202, foll. 17 U.S.C. § 204. Although defendant obtained a "Certificate of Registration of a Claim to Copyright", § 202.1(a) of the Rules and Regulations provides that "[w]ords and short phrases such as names, titles, and slogans" are examples of "works not subject to copyright." Section 202.14(c), pertaining to Class K in which defendant's certificate was issued, distinctly provides that "[a] claim to copyright cannot be registered in a print or label consisting solely of trademark subject matter and lacking copyrightable matter." Additionally, it provides that "registration of a claim to copyright does not give the claimant rights available by trademark registrations at the Patent Office."

■ Defendant also argues that plaintiff is barred by laches because, with alleged knowledge of defendant's poster as early as April 1971, if not earlier, plaintiff delayed bringing this suit until February 1972, some ten to fifteen months later. Plaintiff's affidavits indicate that extensive prior discussions had gone on between plaintiff's counsel and a previous attorney for defendant. When defendant's present counsel appeared he advised plaintiff's counsel that further printing and selling of the poster would be halted pending advice to the client from him. Defendant did in fact slightly revise the poster ("Trade-Mark" to "Raid-Mark") in February 1972. This action was promptly commenced when plaintiff noted the nature of the change. Under the circumstances, plaintiff can hardly be charged with laches. See Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, 433 F.2d 686, 704 (2 Cir. 1970).

■ Finally, defendant contends that its poster is but an instance of free expression secured by the First Amendment, which constitutes fair comment and cannot be defamatory without a claim of malice. Defendant again relies on *Girl Scouts, supra,* in which it was stated that in the absence of special circumstances "a court of equity will not enjoin or restrain literary or spoken material," 304 F.Supp. at 1234, quoting a passage from Konigsberg v. Time, Inc., 288 F.Supp. 989 (S.D.N.Y.1968). While plaintiff *does* assert a claim that the association of cocaine with its trademark is defamatory, the thrust of its claim is

against defendant's imitative use of that trademark in a manner injurious to the mark and to plaintiff's business reputation and good will. The special circumstances mentioned in *Girl Scouts, supra,* are here present, for if they were not then any unauthorized reproduction of a trade name or mark would be without remedy. The Lanham Act itself, 15 U.S.C. § 1114(2) (a) and (b), recognizes that even newspapers, magazines and periodicals, as well as printers, may be enjoined from *innocent* infringement of another's mark as to future publication. Nothing in Paulsen v. Personality Posters, Inc., 59 Misc.2d 444, 299 N.Y.S.2d 501 (Sup.Ct.1968), cited by defendant, would bar such an injunction under New York law.

In the court's opinion plaintiff has sufficiently demonstrated its right to injunctive relief under either federal or state law relating to the protection of trade names and marks from defendant's unauthorized use of the "Coca-Cola" format in its poster. Apposite here is Judge Lasker's comment in Estee Lauder, Inc. v. Watsky, 323 F.Supp. 1064 (S.D.N.Y.1970) at 1068:

> It is true that the granting of an injunction may impose hardship on the defendants, but the failure to grant relief would impose a greater hardship on the plaintiff. To the defendants the product involved is one of a large number in which each of them deals; it is a small part of their business. To the plaintiff its name is at stake, and continued injury to its reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them.

Here also the balance of hardships tips decidedly toward the plaintiff, since the temporary discontinuance of one poster *pendente lite* is hardly likely to put defendant out of business. Plaintiff has already posted security in the form of a bond for $25,000 in connection with a temporary restraining order. Similar security will assure recovery of any loss by defendant occasioned by the preliminary injunction should it eventually prove to be unwarranted.

Plaintiff's motion for a preliminary injunction is granted on condition that it furnish security for any costs or damages of defendant in the amount of $25,000. The foregoing constitutes the court's findings of fact and conclusions of law for purposes of Rule 52, F.R.Civ.P.

Settle order on notice.