**DEERE & COMPANY, Plaintiff–Appellee, Cross–Appellant,**

v.

**MTD PRODUCTS, INC., Defendant–Appellant, Cross–Appellee.**

No. 858, Dockets 94–7799, 94–7863.

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1994.
Decided Nov. 21, 1994.

---

1. This opinion has been circulated to the active judges of the Court.

Patricia Hatry, New York City (Jeffrey C. Katz, Neal H. Klausner, Davis & Gilbert, on the brief), for defendant-appellant.

Richard Kurnit, New York City (Arthur J. Ginsburg, Edward H. Rosenthal, David Y. Atlas, Kyran Cassidy, Frankfurt, Garbus, Klein & Selz, on the brief), for plaintiff-appellee.

Before: NEWMAN, Chief Judge, WALKER and CALABRESI, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal in a trademark case presents a rarely litigated issue likely to recur with increasing frequency in this era of head-to-head comparative advertising. The precise issue, arising under the New York anti-dilution statute, N.Y.Gen.Bus.Law § 368–d (McKinney 1984), is whether an advertiser may depict an altered form of a competitor's trademark to identify the competitor's product in a comparative ad. The issue arises on an appeal by defendant-appellant MTD Products, Inc. ("MTD") from the August 9, 1994, order of the United States District Court for the Southern District of New York (Lawrence M. McKenna, Judge) granting a preliminary injunction to plaintiff-appellee Deere & Company ("Deere") and Deere's cross-appeal to broaden the scope of the injunction beyond New York State, 860 F.Supp. 113. The injunction prevents MTD from airing a television commercial that shows an animated version of the leaping deer that has become appellee's well-known logo.

■ Although a number of dilution cases in this Circuit have involved use of a trademark by a competitor to identify a competitor's products in comparative advertising,[1] as

---

1. See, e.g., Diversified Marketing, Inc. v. Estee Lauder, Inc., 705 F.Supp. 128 (S.D.N.Y.1988) (no dilution under section 368–d where defendant used name for comparison purposes with adver-

well as use by a noncompetitor in a humorous variation of a trademark,[2] we have not yet considered whether the use of an altered version of a distinctive trademark to identify a competitor's product and achieve a humorous effect can constitute trademark dilution. Though we find MTD's animated version of Deere's deer amusing, we agree with Judge McKenna that the television commercial is a likely violation of the anti-dilution statute. We therefore affirm the preliminary injunction.

## Background

Deere, a Delaware corporation with its principal place of business in Illinois, is the world's largest supplier of agricultural equipment. For over one hundred years, Deere has used a deer design ("Deere Logo") as a trademark for identifying its products and services. Deere owns numerous trademark registrations for different versions of the Deere Logo. Although these versions vary slightly, all depict a static, two-dimensional silhouette of a leaping male deer in profile. The Deere Logo is widely recognizable and a valuable business asset.[3]

MTD, an Ohio company with its principal place of business in Ohio, manufactures and sells lawn tractors. In 1993, W.B. Doner & Company ("Doner"), MTD's advertising agency, decided to create and produce a commercial—the subject of this litigation—that would use the Deere Logo, without Deere's authorization, for the purpose of comparing Deere's line of lawn tractors to MTD's "Yard–Man" tractor. The intent was to identify Deere as the market leader and convey the message that Yard–Man was of comparable quality but less costly than a Deere lawn tractor.

Doner altered the Deere Logo in several respects. For example, as Judge McKenna found, the deer in the MTD version of the logo ("Commercial Logo") is "somewhat differently proportioned, particularly with respect to its width, than the deer in the Deere Logo." Doner also removed the name "John Deere" from the version of the logo used by Deere on the front of its lawn tractors, and made the logo frame more sharply rectangular.

More significantly, the deer in the Commercial Logo is animated and assumes various poses. Specifically, the MTD deer looks over its shoulder, jumps through the logo frame (which breaks into pieces and tumbles to the ground), hops to a pinging noise, and, as a two-dimensional cartoon, runs, in apparent fear, as it is pursued by the Yard–Man lawn tractor and a barking dog. Judge McKenna described the dog as "recognizable as a breed that is short in stature," and in the commercial the fleeing deer appears to be even smaller than the dog. Doner's interoffice documents reflect that the animated deer in the commercial was intended to appear "more playful and/or confused than distressed."

MTD submitted the commercial to ABC, NBC, and CBS for clearance prior to airing, together with substantiation of the various claims made regarding the Yard–Man lawn tractor's quality and cost relative to the corresponding Deere model. Each network ultimately approved the commercial, though ABC reserved the right to re-evaluate it "should there be [a] responsible complaint," and CBS demanded and received a letter of indemnity from Doner. The commercial ran from the week of March 7, 1994, through the week of May 23, 1994.

---

tising slogan, "If You Like Estee Lauder ... You'll Love Beauty USA").

**2.** *See, e.g., McDonald's Corp. v. McBagel's, Inc.,* 649 F.Supp. 1268 (S.D.N.Y.1986) (take-off on McDonald's trade-name); *Universal City Studios, Inc. v. T–Shirt Gallery, Ltd.,* 634 F.Supp. 1468 (S.D.N.Y.1986) (T-shirt picturing "Miami Mice" poked fun at plaintiff's "Miami Vice" trademark); *Coca–Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183 (E.D.N.Y.1972) ("Enjoy Cocaine" poster making fun of Coca–Cola trademark).

**3.** Deere's net sales of equipment bearing the Deere Logo for the fiscal year 1993 exceeded $6.4 billion, and Deere contends that revenues from its financial services and insurance operations, which also utilize the Deere Logo, exceeded $1.1 billion. Deere has spent a substantial amount of money using the Deere Logo to advertise its products and services.

Deere filed a complaint, along with an order to show cause seeking a preliminary injunction and a temporary restraining order, alleging violations of the New York anti-dilution statute and section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988), as well as common law claims of unfair competition and unjust enrichment. Following a hearing, the District Court denied Deere's application for a temporary restraining order, but subsequently found that Deere had demonstrated a likelihood of prevailing on its dilution claim and granted preliminary injunctive relief limited to activities within New York State. In its August 11, 1994, Supplemental Findings of Fact, Conclusions of Law, and Order ("Supplemental Order"), the Court concluded that Deere had not shown a likelihood of success on the merits of its Lanham Act claim.[4]

On appeal, MTD argues that the anti-dilution statute does not prohibit commercial uses of a trademark that do not confuse consumers or result in a loss of the trademark's ability to identify a single manufacturer, or tarnish the trademark's positive connotations. Deere cross-appeals, contending that injunctive relief should not have been limited to New York State. We affirm both the finding of likely dilution and the scope of the injunction.[5]

### Discussion

■ Section 368–d, which has counterparts in more than twenty states, reads as follows:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y.Gen.Bus.Law § 368–d (McKinney 1984). The anti-dilution statute applies to competitors as well as noncompetitors, see Nikon Inc. v. Ikon Corp., 987 F.2d 91, 96 (2d Cir. 1993), and explicitly does not require a plaintiff to demonstrate a likelihood of consumer confusion, see Sally Gee, Inc. v. Myra Hogan, Inc., 699 F.2d 621, 624 (2d Cir.1983).

■ In order to prevail on a section 368–d dilution claim, a plaintiff must prove, first, that its trademark either is of truly distinctive quality or has acquired secondary meaning, and, second, that there is a "likelihood of dilution." Sally Gee, 699 F.2d at 625. A third consideration, the predatory intent of the defendant, may not be precisely an element of the violation, but, as we discuss below, is of significance, especially in a case such as this, which involves poking fun at a competitor's trademark.

MTD does not dispute that the Deere Logo is a distinctive trademark that is capable of dilution and has acquired the requisite secondary meaning in the marketplace. See Allied Maintenance Corp. v. Allied Mechanical Trades, Inc., 42 N.Y.2d 538, 545, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1166 (1977). Therefore, the primary question on appeal is whether Deere can establish a likelihood of dilution of this distinctive mark under section 368–d.

*Likelihood of Dilution.* Traditionally, this Court has defined dilution under section 368–d "as either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to con-

---

**4.** The Lanham Act requires a showing that "the challenged advertisement is literally false" or that it is "likely to mislead or confuse consumers." *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir.1992). Deere conducted a consumer survey to show the degree of confusion among viewers as to, among other things, the source of the MTD commercial, but the District Court was not sufficiently persuaded by the results to issue an injunction on this claim.

**5.** Because we agree with the District Court that the considerations supporting a geographic limitation would apply with equal force to Deere's common law causes of action for unfair competition by misappropriation and unjust enrichment, we do not consider those claims. Deere does not challenge the Court's Lanham Act ruling in its briefs on appeal. The commercial does not appear to be misleading or confusing as to sponsorship, and is in any event not so misleading or confusing as to warrant preliminary injunctive relief as a matter of law. Accordingly, we confine our analysis to the question of dilution under the New York statute.

vey." *See Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1031 (2d Cir.1989) (citing *Sally Gee*, 699 F.2d at 625 (quoting 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 84.2, at 954–55)).

In previous cases, "blurring" has typically involved "the whittling away of an established trademark's selling power through its unauthorized use by others upon dissimilar products." *Mead Data*, 875 F.2d at 1031 (describing such " 'hypothetical anomalies' as 'DuPont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, Bulova gowns, and so forth' ") (quoting legislative history of section 368–d) (citation omitted). Thus, dilution by "blurring" may occur where the defendant uses or modifies *the plaintiff's trademark* to identify *the defendant's goods and services*, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.[6]

"Tarnishment" generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product.[7] In such situations, the trademark's reputation and commercial value might be diminished because the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods, or because the defendant's use reduces the trademark's reputation and standing in the eyes of consumers as a wholesome identifier of the owner's products or services.

At the hearing on Deere's application for a temporary restraining order, the District Court initially suggested that there was neither blurring nor tarnishment as those terms have been used, and consequently no dilution of the Deere Logo. The Court observed that MTD's commercial "makes it clear that Deere is a distinct product coming from a different source than Yard–Man," and does not "bring the plaintiff's mark into disrepute." However, in its preliminary injunction ruling, the Court found that Deere would probably be able to establish a likelihood of dilution by blurring under section 368–d; tarnishment was not discussed.

The District Court noted that "the instant case [wa]s one of first impression" because it involved a defendant's use of a competitor's trademark to refer to the competitor's products rather than to identify the defendant's products. For this reason, the traditional six-factor test for determining whether there has been dilution through blurring of a trademark's product identification was not fully applicable.[8] Focusing only on the alteration of the static Deere Logo resulting from MTD's animation, the Court concluded that MTD's version constituted dilution because it was likely to diminish the strength of identification between the original Deere symbol and Deere products,[9] and to blur the distinc-

---

**6.** *See, e.g., Jordache Enterprises, Inc. v. Levi Strauss & Co.*, 841 F.Supp. 506 (S.D.N.Y.1993) (Jordache used Levi's mark to identify Jordache's product); *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F.Supp. 1108 (S.D.N.Y.1981) (defendant used version of plaintiff's lion trademark to advertise defendant's products).

**7.** *See, e.g., Coca–Cola Co.*, 346 F.Supp. at 1183 (defendant sold posters reading "Enjoy Cocaine" in script and color identical to that used for Coca–Cola trademark); *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir.1991) (finding dilution because "[i]f the Star Award looks cheap or shoddy, ... the Oscar's distinctive quality as a coveted symbol of excellence ... is threatened"); *Chemical Corp. of America v. Anheuser–Busch, Inc.*, 306 F.2d 433 (5th Cir.1962) (defendant adapted plaintiff's slogan, "Where there's life ... there's Bud," for its insecticide slogan, "Where there's life ... there's bugs"),

*cert. denied*, 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963).

**8.** *See Mead Data*, 875 F.2d at 1035 (Sweet, J., concurring) (suggesting that courts evaluating blurring claims look at (1) similarity of the marks, (2) similarity of the products covered by the marks, (3) sophistication of consumers, (4) predatory intent, (5) renown of the senior mark, and (6) renown of the junior mark).

**9.** To support its argument that animation does not weaken or dilute a trademark, MTD pointed to examples of entities animating their own trademarks. Indeed, at one point Deere had considered and rejected the possibility of animating its logo. But, as the District Court observed, for purposes of trademark law, "there is a vast difference between the holder of a trademark animating its *own* static mark and a competitor animating the holder's mark without the owner's permission."

tion between the Deere Logo and other deer logos in the marketplace, including those in the insurance and financial markets. Although we agree with the District Court's finding of a likelihood of dilution, we believe that MTD's commercial does not fit within the concept of "blurring," but, as we explain below, nonetheless constitutes dilution.

The District Court's analysis endeavored to fit the MTD commercial into one of the two categories we have recognized for a section 368-d claim. However, the MTD commercial is not really a typical instance of blurring, *see, e.g., Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F.Supp. 1189, 1208 (E.D.N.Y.1983) (finding blurring of "Toys 'R' Us" mark by "Kids 'r' Us" mark), because it poses slight if any risk of impairing the identification of Deere's mark with its products. Nor is there tarnishment, which is usually found where a distinctive mark is depicted in a context of sexual activity, obscenity, or illegal activity. *See, e.g., Coca-Cola,* 346 F.Supp. at 1191 (relying on dilution by tarnishment as alternative basis for issuance of preliminary injunction against defendant's "Enjoy Cocaine" poster); *Pillsbury Co. v. Milky Way Productions, Inc.,* 215 U.S.P.Q. 124, 135 (N.D.Ga.1981) (concluding that defendant's sexually-oriented variation tarnished plaintiff's mark). But the blurring/tarnishment dichotomy does not necessarily represent the full range of uses that can dilute a mark under New York law. *See Allied Maintenance,* 42 N.Y.2d at 545, 399 N.Y.S.2d at 632, 369 N.E.2d at 1166 (defining dilution simply as "the gradual whittling away of a firm's distinctive trade-mark or name"); *Shadow Box, Inc. v. Drecq,* 71 Misc.2d 733, 734, 336 N.Y.S.2d 801, 802 (N.Y.Sup.Ct.1972) (stating that section 368-d "protects ... against any use of the symbol that may drain off any of the potency of the mark").

In giving content to dilution beyond the categories of blurring or tarnishment, however, we must be careful not to broaden section 368-d to prohibit all uses of a distinctive mark that the owner prefers not be made. Several different contexts may conveniently be identified. Sellers of commercial products may wish to use a competitor's mark to identify the competitor's product in comparative advertisements. *See, e.g., R.G. Smith v. Chanel, Inc.,* 402 F.2d 562, 567 (9th Cir.1968) (perfume manufacturer used competitor's mark in comparative advertisements; injunction denied). As long as the mark is not altered, such use serves the beneficial purpose of imparting factual information about the relative merits of competing products and poses no risk of diluting the selling power of the competitor's mark. Satirists, selling no product other than the publication that contains their expression, may wish to parody a mark to make a point of social commentary, *see, e.g., Stop the Olympic Prison v. United States Olympic Committee,* 489 F.Supp. 1112, 1123 (S.D.N.Y.1980) (poster used defendant's trademark to criticize trademark owner's involvement with proposed prison; injunction denied), to entertain, *see, e.g., L.L. Bean v. Drake Publishers, Inc.,* 811 F.2d 26 (1st Cir.) (satiric magazine parodying L.L. Bean catalogue; injunction denied), *cert. denied,* 483 U.S. 1013, 107 S.Ct. 3254, 97 L.Ed.2d 753 (1987), or perhaps both to comment and entertain, *see, e.g., Girl Scouts of USA v. Personality Posters Manufacturing Co.,* 304 F.Supp. 1228, 1233 (S.D.N.Y.1969) (poster depicting pregnant Girl Scout to suggest humorously that trademark owner's traditional image of chastity and wholesomeness was somewhat illusory; injunction denied). Such uses risk some dilution of the identifying or selling power of the mark, but that risk is generally tolerated in the interest of maintaining broad opportunities for expression. *Cf. Rogers v. Grimaldi,* 875 F.2d 994, 1000 (2d Cir.1989) (risk that film title might mislead and violate Lanham Act outweighed by danger of restricting artistic expression).

■ Sellers of commercial products who wish to attract attention to their commercials or products and thereby increase sales by poking fun at widely recognized marks of noncompeting products, *see, e.g., Eveready Battery Co., Inc. v. Adolph Coors Co.,* 765 F.Supp. 440 (N.D.Ill.1991) (beer manufacturer spoofed Energizer Bunny trademark; preliminary injunction under Lanham Act and state dilution statute denied), risk diluting the selling power of the mark that is made fun of. When this occurs, not for worthy

purposes of expression, but simply to sell products, that purpose can easily be achieved in other ways. The potentially diluting effect is even less deserving of protection when the object of the joke is the mark of a directly competing product. *See, e.g., Wendy's International, Inc. v. Big Bite, Inc.,* 576 F.Supp. 816 (S.D.Ohio 1983) ("fast-food" chain made fun of "fast-food" competitors' trademarks; preliminary injunction granted under Lanham Act). The line-drawing in this area becomes especially difficult when a mark is parodied for the dual purposes of making a satiric comment and selling a somewhat competing product. *See, e.g., Yankee Publishing Inc. v. News America Publishing Inc.,* 809 F.Supp. 267 (S.D.N.Y.1992) (magazine satirized another magazine; injunction denied).

■ Whether the use of the mark is to identify a competing product in an informative comparative ad, to make a comment, or to spoof the mark to enliven the advertisement for a noncompeting or a competing product, the scope of protection under a dilution statute must take into account the degree to which the mark is altered and the nature of the alteration. Not every alteration will constitute dilution, and more leeway for alterations is appropriate in the context of satiric expression and humorous ads for noncompeting products. But some alterations have the potential to so lessen the selling power of a distinctive mark that they are appropriately proscribed by a dilution statute. Dilution of this sort is more likely to be found when the alterations are made by a competitor with both an incentive to diminish the favorable attributes of the mark and an ample opportunity to promote its products in ways that make no significant alteration.

We need not attempt to predict how New York will delineate the scope of its dilution statute in all of the various contexts in which an accurate depiction of a distinctive mark might be used, nor need we decide how variations of such a mark should be treated in different contexts. Some variations might well be *de minimis,* and the context in which even substantial variations occur may well have such meritorious purposes that any diminution in the identifying and selling pow-

er of the mark need not be condemned as dilution.

Wherever New York will ultimately draw the line, we can be reasonably confident that the MTD commercial challenged in this case crosses it. The commercial takes a static image of a graceful, full-size deer—symbolizing Deere's substance and strength—and portrays, in an animated version, a deer that appears smaller than a small dog and scampers away from the dog and a lawn tractor, looking over its shoulder in apparent fear. Alterations of that sort, accomplished for the sole purpose of promoting a competing product, are properly found to be within New York's concept of dilution because they risk the possibility that consumers will come to attribute unfavorable characteristics to a mark and ultimately associate the mark with inferior goods and services. *See Merriam–Webster, Inc. v. Random House, Inc.,* 35 F.3d 65, 73 (2d Cir.1994) (injunction under section 368–d appropriate where there is likelihood that distinctive trademark will be " 'weakened, blurred or diluted' " in its value or quality) (quoting *Miss Universe, Inc. v. Patricelli,* 753 F.2d 235, 238 (2d Cir.1985)); *Sally Gee,* 699 F.2d at 624–25 ("The interest protected by § 368–d is not simply commercial goodwill, but the selling power that a distinctive mark or name with favorable associations has engendered for a product in the mind of the consuming public.").

Significantly, the District Court did not enjoin accurate reproduction of the Deere Logo to identify Deere products in comparative advertisements. MTD remains free to deliver its message of alleged product superiority without altering and thereby diluting Deere's trademarks. The Court's order imposes no restriction on truthful advertising properly comparing specific products and their "objectively measurable attributes." *FTC Policy Statement on Comparative Advertising,* 16 C.F.R. § 14.15 n. 1 (1993). In view of this, the District Court's finding of a likelihood of dilution was entirely appropriate, notwithstanding the fact that MTD's humorous depiction of the deer occurred in the context of a comparative advertisement.

■ *Predatory Intent.* The District Court recognized that we have not been authorita-

tively advised by New York courts nor have we made a clear-cut prediction as to whether "a showing of predatory intent is required for, or merely relevant to, a finding that the anti-dilution statute has been violated." Indeed, New York law has not authoritatively clarified what "predatory intent" means in the context of an anti-dilution claim. In *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567, 576–77 (2d Cir.1993), we characterized predatory intent as an element of a dilution claim, but we have more often referred to it as merely a factor relevant to a determination of dilution, *see Merriam–Webster*, 35 F.3d at 73; *Sally Gee*, 699 F.2d at 626; *see also Mead Data*, 875 F.2d at 1037 (Sweet, J., concurring).

Until New York courts clarify the relevance of intent under section 368–d, we prefer to proceed cautiously, eschewing definitive statements that endeavor to characterize a subjective element appropriate for all contexts.[10] In the context of trademark parody or alteration, a modest version of subjective intent can helpfully distinguish uses of trademarks that endeavor to sell products from uses that seek to make a social or political commentary or an artistic expression. To serve this purpose, all that is needed is an intent to promote one's product. As the District Court found, at least such intent was clearly present in this case.

■ *Scope of Injunction.* Finally, turning to Deere's objection to the geographic scope of the injunction, we conclude that the District Court did not exceed its discretion in limiting the scope of relief to New York State. *See Nikon*, 987 F.2d at 94 (scope of injunction reviewed for abuse of discretion).

Although the record does not clearly reflect the reasons for the limitation, the District Court observed that "the same considerations that led [it] to limit the injunctive relief for the violation of the New York anti-dilution statute to activities originating or having an effect within the boundaries of the State of New York likewise would apply to injunctive relief granted pursuant to Deere's common law claims of unfair competition and unjust enrichment."

It is thus clear that the District Court believed it had the power to grant broader injunctive relief but declined to exercise it. In view of the novelty of the issues raised, we cannot say that limiting interim relief to conduct in New York State was beyond "the range of [the District Court's] decision-making authority," *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987), notwithstanding the fact that district courts have in other circumstances granted nationwide injunctive relief on trademark dilution claims. *See, e.g., Stern's Miracle–Gro Products, Inc. v. Shark Products, Inc.*, 823 F.Supp. 1077, 1095–96 (S.D.N.Y.1993); *Instrumentalist Co. v. Marine Corps League*, 509 F.Supp. 323, 340 (N.D.Ill.1981), *aff'd*, 694 F.2d 145 (7th Cir.1982).

Although it is well established that an advertiser may use a competitor's trademark for the purpose of comparing its products directly to those of the competitor, no uniform rule exists where, as here, the comparative advertiser not only uses the competitor's mark but alters it. The District Court correctly perceived the instant case to be one of "first impression," particularly because MTD's commercial creates a likelihood of dilution involving neither "blurring" nor "tarnishing" as those terms have generally been understood.

Moreover, a number of states do not have anti-dilution laws, and even those states with such laws or similar causes of action might not restrict commercial use of trademarks that do not confuse consumers or blur or tarnish the trademark. *Cf. Rosemont Enterprises, Inc. v. Urban Systems, Inc.*, 42 A.D.2d 544, 345 N.Y.S.2d 17, 18 (1973) (restricting injunction to New York because "[i]n other jurisdictions ..., the law with

---

**10.** As the District Court noted, our characterization of "predatory intent" as an "element" of an anti-dilution claim in *W.W.W. Pharmaceutical*, 984 F.2d at 576–77, may have resulted from an overreading of our prior decision in *Sally Gee* by the one authority, *Lobo Entertainments, Inc. v. Tunnel, Inc.*, 693 F.Supp. 71 (S.D.N.Y.1988), relied on in *W.W.W. Pharmaceutical* for this proposition. *Sally Gee* had not identified "predatory intent" as an "element" of an anti-dilution claim, as *Lobo* had indicated, 693 F.Supp. at 79, but had said only that "the absence of predatory intent" was a "relevant factor" in assessing an anti-dilution claim. 699 F.2d at 626.

respect to the right of privacy could have other efficacy with respect to a public figure ... both in common-law interpretation and in statutes").[11]

Particularly at this early stage in the litigation, where the relief is preliminary, it was proper for the District Court to restrict the reach of the injunction. *See Blue Ribbon Feed Co. v. Farmers Union Central Exchange, Inc.,* 731 F.2d 415, 422 (7th Cir.1984) (recognizing that "considerations of comity among the states favor limited out-of-state application of exclusive rights acquired under domestic law, and a district court does not err when it takes a restrained approach to the extra-territorial application of such rights"). Accordingly, we do not disturb the geographic limitation.

Conclusion

The order of the District Court granting a preliminary injunction as to activities within New York State is affirmed.

**11.** Additionally, at least one state does not apply its anti-dilution law to competitors. *See, e.g.,* *AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 619 (7th Cir.1993) (Illinois).