**CALVIN KLEIN TRADEMARK TRUST and Calvin Klein, Inc., Plaintiffs,**

v.

**Linda WACHNER, the Warnaco Group, Inc., Warnaco Inc., Designer Holdings Ltd., CKJ Holdings, Inc., Jeanswear Holdings, Inc., Calvin Klein Jeanswear Co. and Outlet Holdings, Inc., Defendants.**

**No. 00 Civ. 4052 JSR.**

United States District Court, S.D. New York.

Jan. 18, 2001.

David Boies, Jonathan Schiller, David Boyd, Armonk, NY, for plaintiffs.

Paul Gaffney, Gregory Craig, Brendon Sullivan, Washington, DC, for defendants.

## MEMORANDUM

RAKOFF, District Judge.

Completing the last unfinished business before the trial of this case, this Memorandum will briefly state the reasons for that portion of the Court's Order of December 19, 2000 that granted in part and denied in part defendants' motion for partial summary judgment. Full familiarity with the facts and terminology of the case is presumed. *See Calvin Klein Trademark Trust v. Wachner*, 2000 WL 1804555, at *1 (S.D.N.Y. Dec. 5, 2000); *Calvin Klein Trademark Trust v. Wachner*, 2001 WL 15663 (S.D.N.Y. Jan.5, 2001).

*Trademark Claims.* Defendants seek dismissal in their entirety of Counts One, Two, Three, and Seven of plaintiffs' Complaint, which allege trademark infringement, false designation of origin, unfair competition, and trademark dilution. Specifically, defendants contend that these are simply disguised claims for breach of contract, and nothing more. Conversely, plaintiffs argue that the same conduct that breaches a contract may also violate an independently-derived trademark interest.

■ Here, plaintiffs base their claim for trademark infringement, false designation of origin, and unfair competition on three basic allegations, *viz.*, that defendants used "unauthorized channels of distribution" to sell and market Calvin Klein goods, distributed "unauthorized articles bearing one or more of the Marks by making unauthorized changes to CKI-designed articles," and operated Calvin Klein Outlet Stores "without approval of their design or merchandise." *See* Complaint, ¶¶ 104, 113, 160. The first of these allegations is insufficient to support a claim for trademark infringement, false designation of origin, or unfair competition. The touchstone of such claims is a likelihood of consumer confusion as to product authenticity or origin. *See, e.g., EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir.2000); *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir.2000); *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 742–43 (2d Cir.1998). Here, even though distribution channels may be "unauthorized," as long as what flows through these channels are genuine articles bearing the licensor's marks, consumer confusion as to product authenticity or origin will not arise.

■ Conversely, the second of these allegations, to the extent it is supported by proof of unauthorized design changes in Calvin Klein jeanswear, sufficiently implicates the possibility of consumer confusion as to support claims of trademark infringement, false designation of origin, and unfair competition. Likewise, to the extent that the third allegation is supported by proof of use of unauthorized designs in the merchandise sold in Calvin Klein Outlet Stores, or in the design of the stores themselves, it implicates the possibility of consumer confusion sufficiently to withstand summary judgment. In short, with regard in plaintiffs' claims for trademark infringement, false designation of origin, and unfair competition, summary judgment is granted to defendants only with respect to.

any such claims premised on use of unauthorized channels of distribution, and is otherwise denied.

■ Plaintiffs' only other trademark-related claim is a claim for "dilution" in Count Three. While a dilution claim is not so much directed at preventing consumer confusion as at avoiding reduction in the "selling power" of the mark, *see Mead Data Central, Inc. v. Toyota Motor Sales,* 875 F.2d 1026, 1030 (2d Cir.1989), the effect here is much the same on the facts of this case, *viz.,* the claim is dismissed so far as it alleges "tarnishment" (*i.e.,* linking of the mark with seamy, shoddy, or otherwise inferior products) based on defendants' alleged "unauthorized" distribution practices, but not to the extent that it alleges "tarnishment" based on the alleged failure of defendants to comply with design or packaging requirements, since only the latter deviations could arguably dilute the selling power of the mark. Finally, to the extent that plaintiffs allege dilution not in the form of "tarnishment" but of "blurring," the claim must be dismissed as a matter of law, since "blurring" refers only to the kind of dilution that occurs when a mark is used on products unrelated to those authorized. *See Hormel Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497, 507 (2d Cir.1996) (analysis of New York anti-dilution statute); *Deere & Co. v. MTD Products, Inc.,* 41 F.3d 39, 43 (2d Cir.1994) (same); *Haas Outdoors, Inc. v. Oak Country Camo., Inc.,* 957 F.Supp. 835, 838 (N.D.Miss.1997) (interpreting the federal anti-dilution statute, 15 U.S.C. § 1125(c)). *Cf. Mead Data Central,* 875 F.2d at 1031.

*Claims Regarding Sales to Discounters.* Defendants also seek summary judgment in their favor on plaintiffs' claims that defendants' distribution of various Calvin Klein products to "warehouse discounters" breached the Quality Assurance Agreement (*see* Count Nine), the Jeanswear License Agreement (*see* Count Ten), and the Men's Accessories License Agreement (*see* Count Eleven).

■ With regard to Count Nine, Section 2.3 of the Quality Assurance Agreement requires that defendants not distribute products to retail outlets inconsistent with the "prestige, value, and reputation" of the plaintiffs' marks. The quoted terms, however, are hardly self-defining, and genuine issues of material fact continue to exist both as to their meaning and as to whether the distribution to Costco, BJ's, Sam's Club, and other discount retailers was consistent with those terms. Accordingly, summary judgment must be denied as to Count Nine.

■ A somewhat closer issue is raised with respect to the parallel claim under Count Ten, which concerns the Jeanswear License Agreement, because Section 4.3 of that agreement provides:

> In order to maintain the reputation, image and prestige of the Licensed Marks, Licensee's distribution patterns (a) shall consist of those retail outlets whose location, merchandising and overall operations are consistent with the quality of Articles and the reputation, image and prestige of the Licensed Marks, and/or (b) shall be consistent with Licensor's past practice, and (c) may include those authorized distribution channels in which apparel products manufactured by Licensor and its licensees and sublicensees bearing the mark CALVIN KLEIN have been or are being sold and such other distribution channels as Licensor shall approve.

The plain meaning of this language is that the licensee can satisfy its obligation under this provision, among other ways, by adopting distribution patterns consistent with the past practice of the licensor. But this is not the same as saying that because the licensor sometimes previously distributed some Marked goods through some off-price retailers, any volume and regularity of distribution of any kind of Marked goods through any off-price retailer, including warehouse discounters, is necessarily in conformance with past dis-

tribution practices. Accordingly, genuine issues of material fact continue to exist that preclude summary judgment with respect to Count Ten.

Finally, with respect to Count Eleven, which relates to the Men's Accessories License Agreement, section 4.6 of that Agreement provides: "[I]f licensee has any questions as to the suitability of any retail outlet, it shall consult with licensor." While the consultation is thus mandatory where a reasonable licensee would have questions about suitability, and while defendants tacitly concede that they did not always consult with plaintiffs before distributing Marked men's accessories to warehouse discounters, defendants again contend that such distribution was in accordance with past practice and, therefore, they had no reason to have any question as to suitability. But since, as previously discussed, the nature and extent of the alleged past practice remains contested, genuine disputes also exist as to whether a reasonable licensee would have had questions sufficient to trigger the consulting obligation of Section 4.6. Consequently, summary judgment must once again be denied.

■ *Claims of Improper Design Injections.* Defendants also seek summary judgment as to all claims by plaintiffs that defendants committed breaches of contract by "injecting" new designs into clothing lines bearing the CK/Calvin Klein Jeans mark without receiving what plaintiffs contend was the requisite prior approval from plaintiffs. *See* Complaint, ¶¶ 59, 61. Defendants argue that any such prior approval requirement imposed by the agreement pertains only to items included in "Collections," which are defined by the agreement as "seasonal collection[s] of one or more articles or grouping of articles," and therefore do not encompass, according to defendants, such non-seasonal "basics" as jeans. Plaintiffs, by contrast, argue that various kinds of jeans are typically included as items in various seasonal collections and therefore are subject to the prior approval

requirement for design injections. There being evidence to support either of these competing arguments, summary judgment must be denied.

■ *Election of Remedies.* Defendants contend that by continuing to enjoy the royalties flowing from Warnaco's sales to discounters and other commercial retailers, and by continuing to perform its own duties under the Jeanswear Licensing Agreement, CKI "elected" to forego the remedy of termination of that contract pursuant to New York's "election of remedies doctrine," which prevents a party from terminating a contract where it has chosen to affirm that contract by continuing its performance thereunder or accepting the performance of the breaching party. *See, e.g., Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 103 F.Supp.2d 711, 736 (S.D.N.Y.2000); *Bigda v. Fischbach Corp.,* 898 F.Supp. 1004, 1011 (S.D.N.Y.1995). Accordingly, defendants ask for summary judgment dismissing plaintiffs' request for the remedy of termination.

■ Plaintiffs' response is to claim that they have contracted with defendants not to have to make such an election, *see ESPN v. Office of the Commissioner,* 76 F.Supp.2d 383, 390 n. 5 (S.D.N.Y.1999), by virtue of Section 14.5 of the Jeanswear License Agreement, which states:

> Acceptance of payments by Licensor shall not be deemed a waiver by Licensor of any violation of or default under any of the provisions of this Agreement by Licensee.

Section 14.5, however, merely states that acceptance of royalties will not waive a claim for breach of contract altogether, not that such acceptance overrides the requirement that remedies be elected. *See generally Bigda v. Fischbach Corp.,* 849 F.Supp. 895, 901 n. 2 (S.D.N.Y.1994); *Apex Pool Equip. Corp. v. Lee,* 419 F.2d 556, 562 (2d Cir.1969). The equitable doctrine of election of remedies—centuries old and deeply rooted in a balance of fairness

to both sides—cannot be overridden by mere supposition or extended inference, but only by explicit language entirely absent here.

Given therefore that the election of remedies doctrine still operates in this case, the question is whether in fact defendants made any such election. It is undisputed that CKI continued to collect royalty payments under the Jeanswear License Agreement through 1999, while continuing to perform its own duties under that agreement, even though it was aware of the various breaches of the Jeanswear License Agreement that it alleges occurred prior to 1999 or, with one exception, even thereafter. Accordingly, with that one exception, plaintiffs may not seek termination as a remedy with respect to these alleged breaches.

■ The one exception relates to defendants' distribution practices during 1999 and early 2000, since there is some competent evidence that the amount of defendants' sales to off-price retailers, including warehouse discounters, increased by more than 100% during that period, but that this substantial increase did not come to plaintiffs' attention until a few weeks before the instant lawsuit was filed seeking, *inter alia*, termination. Accordingly, questions of material fact remain as to whether this apparently significant increase of sales in 1999 and early 2000 was such a marked departure from defendants' past distribution practices as to constitute a separate breach of the Jeanswear License Agreement that could give rise to a separate claim for termination as to which no election had been made prior to the instant lawsuit. *See Bigda*, 849 F.Supp. at 901; *Apex Pool*, 419 F.2d at 562.[1]

*Miscellaneous.* While defendants also seek summary judgment on a number of other issues, their submissions on these points are both factually and legally insufficient to carry their burden. For exam-

ple, while defendants argue that plaintiffs have failed to prove damages from the allegedly unauthorized sales to warehouse discounters, plaintiffs have in fact adduced competent evidence that CKI, among other damages, lost accounts of "full price" department stores because of the sale of jeanswear to warehouse discounters. *See* Plaintiffs' Supplemental Submission of Record Evidence in Opposition to Defendants' Motion for Partial Summary Judgment, Ex. 16, at 39–41; Ex. 18, at 238. Accordingly, the Court adheres to its Order of December 19, 2000 and grants summary judgment only to the extent there stated.

---

1. While defendants also seek to use the election of remedies doctrine to preclude termination of the Store License Agreement, the

Court finds that genuine issues of material fact leave this matter wholly unresolvable on summary judgment.