**PERKINS SCHOOL FOR THE BLIND, Plaintiff,**

v.

**MAXI–AIDS, INC., Elliot Zaretsky, Mitchel Zaretsky, Harold Zaretsky, and Pamela Zaretsky–Stein, Defendant.**

**No. CV 02–2897(ADS)(ARL).**

United States District Court,
E.D. New York.

Aug. 1, 2003.

---

The Dweck Law Firm, LLP, New York, NY by Richard A. Hubbell, Jack Dweck, of Counsel, for the Plaintiff.

Law Office of Michael D. Soloman, Levittown, NY, for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court are the following motions by Maxi–Aids, Inc. ("Maxi–Aids"), Elliot Zaretsky, Harold Zaretsky, and Pamela Zaretsky–Stein (collectively, the "defendants"): (1) a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Fed. R.Civ.P.); and (2) a motion for joinder under Fed.R.Civ.P. 19.

## I. BACKGROUND

The following facts are taken from the complaint, which the Court takes to be true. Perkins School for the Blind ("Perkins" or the "plaintiff") is a non-profit institution that was chartered in 1829 as the first school for the blind in the United States. Since its establishment, Perkins has provided programs and services to the blind, visually handicapped, deafblind, and multi-handicapped. Perkins currently pro-

vides educational training to students from birth to 22 years and services for adults in residential, day, and community-based programs.

In 1951, after years of research and design, the plaintiff began manufacturing "Perkins Braillers" which are similar to typewriters and are used for printing in braille. Perkins owns the exclusive rights and privileges to the trademark "Perkins Braillers." The braillers are manufactured through the plaintiff's Howe Press Division ("Howe") and come in standard, unimanual, large cell and electric models. They are sold domestically for $640, $690, $730 and $900, respectively. Internationally, Perkins sells each unit for $20 more.

In 1997, as part of an effort to make Perkins Braillers more accessible to individuals in developing countries, Howe entered into an agreement with the South African National Council for the Blind ("SANCB"). Under this agreement, standard parts would be shipped to the SANCB for assembly, and the SANCB would then sell the assembled Perkins Braillers solely to individuals and entities in developing countries. The braillers would be sold at a lower price of $375, due to the reduced cost of production in South Africa and a $100 per unit subsidy provided by the Hilton Foundation.

Maxi–Aids is a company engaged in the for-profit sale and distribution of products to blind and visually impaired persons. The defendants Elliot Zaretsky, Mitchel Zaretsky, Harold Zaretsky, and Pamela Zaretsky–Stein are shareholders and/or directors of Maxi–Aids. The plaintiff claims that the defendants obtained Perkins Braillers from the SANCB at the reduced cost and resold them for a huge profit in non-developing countries, mostly in the United States.

According to Perkins, the defendants ordered the braillers through "straw persons, shell organizations, or through persons falsely claiming to be users or dealers in third-world countries when, in fact, all such purchases [were] made by or on behalf of the [d]efendants, paid for by the [d]efendants and shipped to the [d]efendants or to persons or entities who would receive them for and on behalf of the [d]efendants, all for the ultimate purpose of resale by the defendants...." As such, the defendants obtained the benefit of the $100 subsidy provided by the Hilton Foundation which was reserved exclusively for blind persons in developing countries. In an attempt to prevent the plaintiff from discovering that the defendants were marketing the plaintiff's braillers in the United States, the defendants removed the Perkins warranty and substituted their own inferior "Maxi–Aids" warranty. According to the plaintiff, the defendants' warranty negatively impacts and dilutes the "Perkins Braillers" trademark.

The plaintiff claims that the defendants have "passed off the infringing braillers sold by them as being their own, without obtaining the permission or consent of the [p]laintiff, and without giving credit to the [p]laintiff or in any way acknowledging the trademark rights of the [p]laintiff." In addition, the plaintiff states that the defendants acquired the braillers in violation of the plaintiff's directives, policies, and procedures. Perkins also claims that even after the plaintiff notified the defendants of their improper acquisition and sale of the braillers, the defendants continued to violate the plaintiff's trademark.

The complaint contains 11 counts against the defendants, which includes claims under the Lanham Act and New York common law and the New York General Business Law ("N.Y.G.B.L."). In particular, the plaintiffs claim that the defendants (1) engaged in trademark infringement under the Lanham Act; (2)

passed off the infringing Braillers as their own without the plaintiff's permission, an activity known as "reverse palming off" under the Lanham Act; (3) violated the Lanham Act's anti-dilution laws, as well as N.Y.G.B.L. § 360–1 (formerly § 368–d); (4) engaged in unfair competition under New York law; (5) violated New York's Deceptive Trade Practices Act, N.Y.G.B.L. §§ 349 and 350; (6) unlawfully interfered with the economic benefit of the plaintiff with respect to its agreement with the SANCB; and (7) engaged in a conspiracy to destroy and interfere with the plaintiff's rights.

The defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim and move to join SANCB as a necessary party under Fed.R.Civ.P. 19.

## II. DISCUSSION

### A. Rule 12(b)(6) Standard

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *See King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State*

*Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). Indeed, it is not the Court's function to weigh the evidence that might be presented at trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. *Id.*

### 1. Trademark Infringement under the Lanham Act

Counts I and II of the complaint contain a claim for trademark infringement. Section 43(a) of the Lanham Act prohibits any person, in connection with goods, services or containers for goods, to use in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... which ... is likely to cause confusion ... as to the origin, sponsorship, or approval" of the goods, services, or commercial activity. 15 U.S.C. § 1125(a)(1). To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477 (2d Cir.1996).

■ "Distribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image. If so, the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder, and its distribution constitutes trademark infringement." *Warner–Lambert Co. v. Northside Dev. Co.*, 86 F.3d 3, 6 (2d Cir. 1996). Put simply, a distribution of non-

conforming products may constitute trademark infringement. *Goldic Electrical Inc. v. Loto Corp.,* 2000 WL 1880327, at *5, No. 00 Civ. 0028, 2000 U.S. LEXIS 18594, at *15 (S.D.N.Y. Dec. 28, 2000) (stating that "[g]oods that do not meet the holder's quality control standards, even if they are not otherwise counterfeit, are not considered 'genuine' products for Lanham Act purposes"). "The motivation behind this rule is simple: when a party sells products that are not subject to a trademark holder's quality control procedures, such sales create a likelihood of confusion as to both quality and source." *Id.*

To obtain relief for such unauthorized distribution which are not subject to the trademark holder's quality control procedures, the trademark holder must allege that: "(i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." *Warner–Lambert Co.,* 86 F.3d at 6.

■ Here, Perkins claims that it owns the trademark "Perkins Brailler." The plaintiff further claims that it follows its warranty program and that the defendants have sold Perkins Braillers with an inferior Maxi–Aids warranty. Perkins rightly asserts that courts have recognized warranties as a quality control mechanism. *See Goldic Electrical Inc.,* 2000 WL 1880327, at *5; *Movado Group, Inc. v. Matagorda Ventures, Inc.,* No. 98 Civ. 6223, 2000 WL 1855120, at *4 & n. 9 (S.D.N.Y. Dec.19, 2000) (stating that a "warranty could make the products significantly different to constitute infringement"). The plaintiff contends that by failing to comply with its quality control procedures based on the Perkins warranty, the defendants have infringed on the plaintiff's trademark and that therefore the defendants' distribution of Perkins Braillers

is likely to cause confusion as to both quality and source. Based on these allegations, the Court finds that the plaintiff has sufficiently alleged a claim for trademark infringement. Thus, dismissal of the trademark infringement claims in Counts I and II is denied.

### 2. Palming Off under the Lanham Act

In Count III, the plaintiff states that the defendants "have passed off the infringing braillers sold by them as being their own, without obtaining the permission or consent of the [p]laintiff, and without giving credit to the [p]laintiff or in any way acknowledging the trademark rights of the [p]laintiff." These allegations describe a prohibited practice under Section 43(a)(1) of the Lanham Act known as "reverse palming off," in which "A promotes B's products under A's name." *Barksdale v. Robinson,* 211 F.R.D. 240, 246 (S.D.N.Y. 2002).

To establish a claim for reverse palming off, the plaintiff must allege "(1) that the work at issue originated with the plaintiff; (2) that [the] origin of the work was falsely designated by the defendant; (3) that the false designation was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Lipton v. The Nature Co.,* 71 F.3d 464, 473 (2d Cir.1995).

■ In order to establish the second element, the plaintiff must allege an affirmative act in which the defendant falsely represented itself as the product's owner or creator. *Markogianis v. Burger King Corp.,* 1997 U.S. Dist. LEXIS 4452, No. 95 Civ. 4627, 1997 WL 167113, at *7 (S.D.N.Y. Apr.8, 1997). Indeed, cases involving a claim for reverse palming off generally entail the defendant removing the plaintiff's trademark and replacing it with the defendant's own mark. *See Innovative*

*Networks, Inc. v. Satellite Airlines Ticketing Centers, Inc.,* 871 F.Supp. 709, 725 (S.D.N.Y.1995) ("Express reverse palming off occurs when 'the wrongdoer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer' ") (quoting *Smith v. Montoro,* 648 F.2d 602, 605 (9th Cir.1981)); *Blazon, Inc. v. DeLuxe Game Corp.,* 268 F.Supp. 416, 425 (S.D.N.Y.1965) ("[W]here a defendant bought bongo drums from plaintiff, removed plaintiff's trademarks, replaced them with its own and used them as a sample to trade of its own brand of bongos").

■ Here, Perkins fails to allege that the defendants attempted to pass off Perkins Braillers as their own. While the plaintiff alleges that the defendants have substituted the plaintiff's warranty with an inferior Maxi–Aids warranty, the complaint is devoid of any allegations tending to establish that the defendants misidentified the braillers and tried to pass off the braillers under their own name instead of the plaintiff's name. As such, the plaintiff has failed to allege a claim for reverse palming. Accordingly, the motion to dismiss Count III of the complaint is granted.

### 3. Federal and State Dilution

■ Counts IV, V, and VI contain claims for dilution under both the Lanham Act and New York state law. "In contrast to a trademark infringement case, where a claimant must establish a likelihood of consumer confusion, the salient issue in establishing dilution by tarnishment under both state and federal law is the 'whittling down' of the identity or reputation of a tradename or mark." *Scholastic, Inc. v. Stouffer,* 124 F.Supp.2d 836, 848 (S.D.N.Y. 2000) (citations omitted). To state a claim for dilution under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c), the plaintiff must allege that, (i)

the senior mark is famous; (ii) the senior mark is distinctive; (iii) the junior use is a commercial use in commerce; (iv) the junior use began after the senior mark had become famous; and (v) the junior use caused dilution of the distinctive quality of the senior mark. *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 215 (2d Cir. 1999).

■ Under the New York Anti–Dilution Law, N.Y.G.B.L. § 360–1, the plaintiff must allege that the trademark is of truly distinctive quality and that there is a likelihood of dilution. *Paco Sport, Ltd., v. Paco Rabanne Perfumes,* 234 F.3d 1262, at 6, No. 00 Civ. 7344, 2000 U.S. LEXIS 29570, at *17 (2d Cir. Nov. 16, 2000) (citation omitted). Under both the Lanham Act and N.Y.G.B.L. § 360–1, dilution can occur by either blurring or tarnishment. *See Cartier, Inc. v. Four Star Jewelry Creations, Inc.,* 2003 WL 21056809, at *14, 01 Civ. 11295, 2003 U.S. Dist. LEXIS 7844, at *42 (S.D.N.Y. May 8, 2003) ("Dilution under New York law can involve either blurring or tarnishment."); *World Wrestling Fedn. Entm't, Inc. v. Bozell,* 142 F.Supp.2d 514, 531 (S.D.N.Y.2001) ("Under federal law, dilution can occur in two forms—blurring or, as we have here, tarnishment").

Dilution by blurring occurs " 'where the defendant uses or modifies the plaintiff's trademark to identify defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.' " *New York Stock Exchange, Inc. v. New York, New York Hotel, LLC,* 293 F.3d 550, 557 (2d Cir.2002) (citing *Deere & Co. v. MTD Prods., Inc.,* 41 F.3d 39, 43 (2d Cir.1994)). Dilution by tarnishment occurs when the plaintiff's trademark is linked to products "of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering

thoughts about the owner's product." *Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 234 F.3d 1262, at *7, No. 00 Civ. 7344, 2000 U.S.App. LEXIS 29570, at *19 (2d Cir. Nov. 16, 2000).

Here, Perkins has sufficiently alleged claims for dilution under both the Lanham Act and N.Y.G.B.L § 360–1. The plaintiff alleges that since 1951 it has continuously manufactured Perkins Braillers and that it owns exclusive rights and privileges to the trademark "Perkins Brailler." Furthermore, the plaintiff alleges that the defendants' distribution of Perkins Braillers constitutes a commercial use. In addition, the defendants began selling Perkins Braillers more than 40 years after the plaintiff began producing and distributing the braillers.

Furthermore, although the plaintiff has not properly alleged dilution by blurring, the Court finds that the plaintiff has sufficiently alleged tarnishment. It is well-established that "tarnishment is not limited to seamy conduct." *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 507 (2d Cir.1996); *see GTFM, Inc. v. Solid Clothing, Inc.*, 215 F.Supp.2d 273, 301 (S.D.N.Y.2002) (explaining that tarnishment is likely when a lower quality product is marketed with a substantially similar mark to that of a higher quality product of the same type); *Toys R Us, Inc. v. Feinberg*, 26 F.Supp.2d 639, 644 (S.D.N.Y.1998), *rev'd on other grounds*, 201 F.3d 432 (2d Cir.1999) (noting that tarnishment can result from a mark's association with an inferior product, not just an offensive product). Tarnishment can occur where "[t]he reputation of the trademark is harmed and its value reduced 'because the public will associate the lack of quality or prestige in the defendant's goods with the plaintiff's unrelated goods,' or because the mark ceases to serve as a 'wholesome identifier of the owner's products.'" *Tom-*

*my Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F.Supp.2d 410, 422 (S.D.N.Y.2002) (citing *Deere & Co.*, 41 F.3d at 43). Indeed, "[t]he sine qua non of tarnishment is a finding that the plaintiff's mark will suffer negative associations through defendant's use." *Hormel*, 73 F.3d at 507.

■ Here, viewing the complaint in the light most favorable to the plaintiff, the Court finds that Perkins has sufficiently alleged a claim for tarnishment. Perkins contends that the defendants' replacement of the Perkins warranty with an inferior Maxi–Aids warranty harms Perkins' business reputation. The plaintiff further argues that consumers may believe that it approved the inferior warranty and that the lower quality service provided by Maxi–Aids is likely to be associated with Perkins. *See Calvin Klein Trademark Trust v. Wachner*, 129 F.Supp.2d 254, 257 (S.D.N.Y.2001) (finding a viable claim for tarnishment based on the defendants' alleged failure to comply with design and packing requirements). The defendants respond by arguing that because they have clearly marked the braillers with their own warranty, any negative associations resulting from service would not reflect upon Perkins. However, whether the different warranty may mislead or deceive a reasonable consumer probably is a question for the jury, not for this Court to decide on a Rule 12(b)(6) motion to dismiss. Accordingly, the defendant's motion to dismiss the federal and New York state anti-dilution claims in Counts IV, V, and VI is denied.

### 4. Deceptive Acts and False Advertising

In addition to the Lanham Act claims described above, Perkins alleges claims for deceptive acts and false advertising under sections 349 and 350 of the N.Y.G.B.L. in

Count VII. Most trademark and trade dress infringement claims are deemed to fall outside the ambit of sections 349 and 350. *Jaret Int'l, Inc. v. Promotion in Motion, Inc.*, 826 F.Supp. 69, 78 (E.D.N.Y. 1993) (citing R. Givens, Practice Commentaries on N.Y.G.B.L. § 349 at 567 (McKinney 1988)). Because sections 349 and 350 are consumer protection statutes, a plaintiff may state a claim under these statutes only if it asserts "consumer injury or harm to the public interest." *La Cibeles, Inc. v. Adipar, Ltd.*, 2000 WL 1253240, at *15, No. 99 Civ. 4129, 2000 U.S. Dist. LEXIS 12676, at *49 (S.D.N.Y.2000) (citing *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264–65 (2d Cir.1995)); *see Student Advantage, Inc. v. Collegeclub.com*, 1999 WL 1095601 at *1, No. 99 Civ. 8604, 1999 U.S. Dist. LEXIS 18998, at *6 (S.D.N.Y. Dec. 3, 1999).

■ Here, Perkins claims only that the defendants' conduct of replacing the Perkins warranty with a Maxi–Aids warranty is likely to cause consumer confusion. It is well-established that "trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers" for purposes of stating a claim under section 349 or 350. *La Cibeles, Inc.*, 2000 WL 1253240 at *15, 2000 U.S. Dist. LEXIS 12676, at *50 (citing *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 1997 WL 137443 at *1, No. 96 Civ. 5150, 1997 U.S. Dist. LEXIS 3403, at *2–3 (S.D.N.Y. Mar. 24, 1997)); *Ivy Mar. Co., Inc. v. C.R. Seasons Ltd.*, 1998 WL 704112 at *7, No. 95 Civ. 0508, 1998 U.S. Dist. LEXIS 15902, at *22 (E.D.N.Y. Oct. 7, 1998) (stating that the injury to consumers or the public interest under section 349 must be more than "the general variety of consumer confusion that is the gravaman of such a claim"). Because the complaint fails to identify the requisite harm to consumers or the public interest, the plaintiff's deceptive acts and false advertising claims pursuant to sections 349 and 350 in Count VII are dismissed.

### 5. New York Unfair Competition

The complaint also contains a claim for unfair competition under New York state law in Count VIII. New York law prohibits "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir.1995). Unfair competition claims under New York law "closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or intent." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir.1993) ("The state law cause of action for unfair competition shares many common elements with the Lanham Act claims of false designation of origin and trademark infringement. . . .").

■ As previously discussed, *see supra* Part 1., the Court finds that the plaintiff has adequately alleged confusion as to quality and source by the defendants' failure to comply with the plaintiff's quality control procedures. In addition, the plaintiff has alleged bad faith by asserting that the defendants used "straw persons, shell entities or 'fronts' to acquire Perkins Braillers from the SANCB." Perkins also states that the defendants acquired the braillers in violation of its directives, policies, and procedures. Furthermore, Perkins claims that the defendants' acts have enabled them to wrongfully obtain the benefit of a charitable subsidy from the Hilton Foundation. In the Court's view, these allegations illustrate the sort of "commercial immorality" that goes to the crux of

unfair competition. *Demetriades v. Kaufmann*, 698 F.Supp. 521, 525 (S.D.N.Y. 1988) (noting that the commercial immorality doctrine proscribes conduct that, "while not necessarily illegal, violates notions of fair play or ethics in commercial relations"). As such, the Court finds that Perkins has adequately alleged a claim for unfair competition. Accordingly, dismissal of the unfair competition claim in Count VIII is denied.

### 6. Unlawful Interference with an Economic Benefit

■ Count X alleges a claim for unlawful interference of an economic benefit. Where, as here, a contractual relationship with a third party is involved, a claim for an unlawful interference with an economic benefit is, in substance, a claim for tortious interference with a contract. *See Kleartex (U.S.A.), Inc. v. Kleartex SDN BHD*, No. 91 Civ. 4739, 1994 U.S. Dist. LEXIS 7996, at *4 (S.D.N.Y. May 11, 1994) (interpreting a claim for unlawful interference with an economic benefit as a claim for tortious interference with contractual relations). Under New York law, to state a claim for tortious interference with contractual relations, the plaintiff must plead four elements: "(1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract; (3) defendant's 'intentional inducement' of the third party to breach the contract, and (4) damages." *Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354, 359 (S.D.N.Y.2001) (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 612 N.E.2d 289, 292, 595 N.Y.S.2d 931 (1993)).

The third element of inducement "requires the plaintiff to establish that but for the allegedly tortious conduct of the defendant, the third party would not have breached her contract." *Michele Pommier Models, Inc. v. Men Women N.Y. Model*

*Mgmt.*, 14 F.Supp.2d 331, 335–36 (S.D.N.Y.1998). Furthermore, the plaintiff must plead that a defendant used "wrongful means" to induce the third party to breach the contract. *Wolff*, 171 F.Supp.2d at 359. "Wrongful means" is defined to include "physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degree of economic pressure...." *Id.* (citing *Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 406 N.E.2d 445, 448–49, 428 N.Y.S.2d 628 (1980)).

In this case, the defendants do not dispute that Perkins properly alleges that it had a contract with SANCB, of which the defendants had knowledge. The defendants also concede that "damages are specifically plead." However, the defendants contend that the complaint is devoid of any allegations supporting that the defendants either induced SANCB to breach the contract or rendered performance of the contract impossible. The Court disagrees.

■ The complaint specifically states that the defendants "engag[ed] in a fraudulent scheme, device and artifice to obtain Perkins Braillers from the SANCB at the subsidized price of $375 ... for resale to persons and entities in non-developing countries, primarily, but not limited to the United States of America." The complaint further alleges that the "fraudulent scheme" utilized "straw persons, shell entities or 'fronts' to acquire Perkins Braillers from the SANCB at the subsidized price and provide these braillers to Maxi–Aids." Viewing the allegations in the complaint as true, the Court finds that the plaintiff alleges that based on the alleged scheme, the defendants caused SANCB to breach its obligation to assemble and sell Perkins Braillers at a reduced price only to individuals and entities in developing countries. As such, the Court finds that Perkins has sufficiently alleged a claim for tortious in-

terference with a contract. Accordingly, the defendants motion to dismiss Count X is denied.

### 7. Conspiracy

 The plaintiff alleges a claim for civil conspiracy in Count XI of the complaint. Although New York law does not recognize an independent tort of conspiracy, if an underlying actionable tort is established, the plaintiff may plead a civil conspiracy. To do so, the plaintiff must demonstrate the primary tort, plus the following four elements: " '(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.' " *Galerie Gmurzynska v. Hutton,* 257 F.Supp.2d 621, n. 12 (S.D.N.Y.2003) (quoting *World Wrestling Federation Entertainment, Inc. v. Bozell,* 142 F.Supp.2d 514, 532 (S.D.N.Y. 2001)). As previously discussed, the Court finds that the plaintiff has adequately alleged a primary tortious conduct in its claims for unfair competition and tortious interference with contract. Furthermore, the Court finds that the plaintiff has alleged the other elements of a civil conspiracy. Perkins alleges that there was an agreement between the defendants, as well as many overt, intentional actions on the part of the defendants, including obtaining the Braillers from the SANCB and selling them in non-developing countries. Perkins also claims that it was hurt economically by the defendants' actions. Therefore, the civil conspiracy claim in Count XI withstands the defendants' motion to dismiss.

### B. Rule 19

The defendants also move to join SANCB pursuant to Fed.R.Civ.P. 19, asserting only that "relief could not be fully granted in this matter without the presence of the SANCB, whose testimony and documentation would allow the full truth of these allegations to be decided." Rule 19(a) provides that a "necessary party" shall be added if:

(1) in the person's absence, complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any risk of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

 The Second Circuit has made clear that Rule 19 "does not list the need to obtain evidence from an entity or individual as a factor bearing upon whether or not a party is necessary or indispensable to a just adjudication." *Johnson v. The Smithsonian Institution,* 189 F.3d 180, 188 (2d Cir.1999) (quoting *Costello Publ'g Co. v. Rotelle,* 670 F.2d 1035, 1044 (D.C.Cir.1981)). Because facilitating discovery is not a basis for joinder under Rule 19, *see Atlantic Mutual Ins. Co. v. Krause Printing Techniques Int'l Inc.,* 2000 WL 45706 at * 1, No. 99 Civ. 3176, 2000 U.S. Dist. LEXIS 552, at *6 (S.D.N.Y. Jan. 20, 2000), the defendants' motion for joinder is denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that defendants' motion to dismiss is **GRANTED** with respect to Counts III and VII and **DENIED** with respect to Counts I, II, IV, V, VI, VIII, X, and XI; and it is further

**ORDERED,** that the plaintiff is permitted to file an amended complaint within 30 days of the date of this order; and it is further

**ORDERED,** that the defendants' motion for joinder under Rule 19 is **DENIED.**

**SO ORDERED.**